**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br>     v.<br><br>RING LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>             Defendants. | Case No. 3:23-cv-00562-AMO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Evidentiary Objections to Declaration of John A. Goldmark and Response to Def.'s Request for Judicial Notice filed concurrently herewith]<br><br>Date:      July 13, 2023<br>Time:     2:00 p.m.<br>Courtroom: 10<br>Judge:   Hon. Araceli Martínez-Olguín |

# **TABLE OF CONTENTS**

**Page(s)**

I.  ARGUMENT ...................................................................................................................1

   A.  The FAC Plausibly Alleges that Defendant's Chat Provider Violated the First, Second, and Third Clauses of Section 631(a) of the California Penal Code...................................1

      1.  The Chat Provider Wiretapped Plaintiff's Chat Communications. .....................1

         a.  Given that the Ninth Circuit Interprets Cellular Phone Communications as Wire Communications Under the Federal Wiretap Act, the First Clause of Section 631(a) Should Be Similarly Interpreted. ....................1

         b.  The California Supreme Court Reads Statutes to Apply to New Technologies..........................................................................................3

         c.  When Faced with Two Possible Interpretations of CIPA, the California Supreme Court Has Construed CIPA in Accordance with the Interpretation that Provides the Greatest Privacy Protection...................4

      2.  Regardless of Whether a Chat Provider Can Wiretap a Smart Phone, Such Chat Provider Cannot Eavesdrop on Such Communications Without All-Party Consent. ........................................................................................................5

      3.  Relevant and Persuasive Case Authority Does Not Recognize an Exception for a Third Party that Surreptitiously Records a Chat and Uses Such Chat Data Other Than to Store It for the Benefit of a Party. ...........................................................5

      4.  The FAC Plausibly Alleges that Defendant's Chat Provider Intercepted the Contents of Plaintiff's Communication "While" "In Transit or Passing Over" "Any Wire, Line, or Cable" in Violation of the Second Clause..........................7

         a.  Numerous Cases Support Plaintiff's Position. .........................................7

         b.  Plaintiff's Communication Need Not Arrive to the Undisclosed Recipient Before It Arrives to the Intended Recipient. .........................11

         c.  The Decisions Cited by Defendant Are Distinguishable.......................11

      5.  The Second Clause Applies to Intercepted Communications Sent From or Received at Any Place Within California..........................................................14

   B.  The Fourth Clause Is Actionable Against Defendant....................................................15

   C.  Plaintiff's Claim Under Section 632.7 Is Actionable. ..................................................15

   D.  The FAC Sufficiently Alleges the Absence of Plaintiff's Consent. ..............................21

      1.  Defendant's Reliance on *Smith v. LoanMe, Inc.* Is Misplaced...........................22

2.    *Smith v. LoanMe, Inc.* Rejected the Basis for *Montantes v. Inventure Foods.*....23

3.    The Court Should Not Consider Extrinsic Evidence to Decide the Issue of Implicit Consent as a Matter of Law. ...................................................................24

4.    Defendant's Purported Evidence Does Not Prove Plaintiff's Impliedly Consented to Defendant's and Kustomer's Wrongdoing. .................................25

E.    The Court Should Reject Defendant's Effort to Smear Plaintiff and Her Counsel.........25

F.    Leave to Amend Should Be Granted...........................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adler v. Community.com, Inc.*,
    2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) (Blumenfeld, J.) .......................................... 13, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 1, 12

*Branden v. Branden*,
    2018 WL 11303983 (E.D. Tenn. Feb. 26, 2018) ................................................................. 9

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................................ 2

*Bruesewitz v. Wyeth LLC*,
    562 U.S. 223 (2011) .......................................................................................................... 20

*Burgess v. United States*,
    553 U.S. 124 (2008) .......................................................................................................... 18

*Byars v. The Goodyear Tire and Rubber Co.*,
    2023 WL 1788553 (C.D. Cal Feb. 3, 2023) (Sykes, J.) ..................................................... 16

*Byars v. Hot Topic, Inc.*,
    2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) (Bernal, J.) .................................................. 21

*Campbell v. Facebook Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014) .................................................................................. 22

*Centre Law and Consulting, LLC v. Axiom Resource Mngt, Inc.*,
    456 F. Supp. 3d 765 (E.D. Va. 2020) .................................................................................. 8

*China Beds Direct LLC v. Winsor*,
    2016 WL 8738435 (E.D. Tenn. Feb. 26, 2016) ................................................................... 9

*Cline v. Reetz-Laiolo*,
    329 F. Sup. 3d 1000, 1046-48, 1051 (N.D. Cal. 2018) (Orrick, J.) .................................... 9

*Cody v. Boscov's, Inc.*,
    - F. Supp. 3d - , 2023 WL 2338302, at *2 (C.D. Cal. Mar. 2, 2023) (Sykes, J.) ......... 1, 15, 16

*Cruz v. Beto*,
    405 U.S. 319 (1972) .......................................................................................................... 12

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) .............................................................................................. 17

*Garback v. Lossing*,
    2010 WL 3733971 (E.D. Mich. Sept. 20, 2010) .................................................................. 10

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) (Chen, J.) .................................................................. 8

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) .................................... 11

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) (Labson Freeman, J.) ............................................ 5, 15

*In re Google Inc. Gmail Litig.*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ..................................................*passim*

*In re Google Inc. Street View Electronic Comms. Litig.*,
    794 F. Supp. 2d 1067 (N.D. Cal. 2012) (Ware, C.J.) ............................................................ 2

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003) ..................................................................................................... 8

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.) .............................................. 3, 13, 17, 18

*In the Matter of the Application of the United States for an Order Authorizing the*
    *Roving Interception of Oral Communications*,
    349 F.3d 1132 (9th Cir. 2003) ........................................................................................... 2, 3

*Javier v. Assurance IQ, LLC*,
    2022 WL 1744107 (9th Cir. May 31, 2022)........................................................................ 5, 22

*Javier v. Assurance IQ, LLC*,
    2023 WL 114225 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) ..................................................... 6, 24

*Joffe v. Google Inc.*,
    746 F.3d 920 (9th Cir. 2013) ................................................................................................. 2

*Klumb v. Goan*,
    2011 WL 13309057 (E.D. Tenn. Jan. 26, 2011) .................................................................. 10

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ............................................................................................ 8, 11

*Kuschner v. Nationwide Credit, Inc.*,
    256 F.R.D. 684, 688 (E.D. Cal. 2009) .................................................................................. 16

*Langer v. Kiser*,
   57 F.4th 1085 (9th Cir. 2023) ....................................................................................21, 25

*Licea v. American Eagle Outfitters, Inc.*,
   - F. Supp. 3d -, 2023 WL 2469630, at *8 (C.D. Cal. Mar. 7, 2023) (Fitzgerald, J.).3, 11, 12, 24

*Licea v. Cinmar, LLC*,
   2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) (Fitzgerald, J.) ..........................................*passim*

*Licea v. Old Navy, LLC*,
   2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) (Sykes, J.) .................................................6, 7, 16

*Luis v. Zang*,
   833 F.3d 619 (6th Cir. 2016) ........................................................................................7, 8, 9

*Martin v. Sephora USA, Inc.*,
   2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.) (F & R), *adopted in*,
   2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.).........................................8, 12, 24

*Mastel v. Miniclip*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...............................................................................19

*Matera v. Google Inc.*,
   2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) (Koh, J.) ..................................................*passim*

*Matera v. Google Inc.*,
   2017 WL 1365021 (N.D. Cal. Mar. 15, 2017) (Koh, J.) ..........................................................5

*McCabe v. Six Continents Hotels, Inc.*,
   2014 WL 465750 (N.D. Cal. Feb. 3, 2014) (Cousins, Mag. J.).........................................16, 18

*Montantes v. Inventure Foods*,
   2014 WL 3305578 (C.D. Cal. July 2, 2014) (Fitzgerald, J.) .............................................23, 24

*Murray v. Financial Visions, Inc.*,
   2008 WL 4850328 (D. Ariz. Nov. 7, 2008) ...........................................................................10

*NEI Contracting and Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*,
   2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ......................................................................22

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ............................................................................................................12

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ..............................................................................................25

*NovelPoster v. Javitch Canfield Group*,
   140 F. Supp. 3d 938, 951 (N.D. Cal. 2014)..........................................................................8, 9

*Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*,
  2017 WL 1215753, at *9 (S.D.N.Y. Mar. 31, 2017) ................................................................ 9

*Popa v. Harriet Carter Gifts, Inc.*,
  52 F.4th 121 (3d Cir. 2022) ........................................................................................................ 7, 8

*Potter v. Havlicek*,
  2007 WL 539534 (S.D. Ohio Feb. 14, 2007) .......................................................................... 10

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) ............................................ *passim*

*Roberts v. Wyndham Int'l, Inc.*,
  2012 WL 6001459 (N.D. Cal. Nov. 30, 2012) (Grewal, Mag. J.) ................................... 16, 18

*Rodriguez v. Google LLC*,
  2022 WL 214552 (N.D. Cal. Jan. 25, 2022) (Seeborg, C.J.) ................................................. 13

*Rosenow v. Facebook, Inc.*,
  2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) (Hayes, J.) ...................................................... 14

*Rouse v. Conner*,
  2012 WL 2589240 (N.D. Cal. July 3, 2012) (Hamilton, J.) .................................................. 24

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) (Aenlle-Rocha, J.) ................................................. *passim*

*Sebastian Int'l, Inc. v. Russolillo*,
  151 F. Supp. 2d 1215 (C.D. Cal. 2001) (Moreno, J.) ....................................................... 17, 18

*Sethy v. Alameda County Water District*,
  545 F.2d 1157 (9th Cir. 1976) (en banc) ........................................................................... 20, 21

*Shefts v. Petrakis*,
  2012 WL 4049484 (C.D. Ill. Sept. 13, 2012) ....................................................................... 10

*Sheu v. Detroit 90/90*,
  2015 WL 2124624 (E.D. Mich. May 6, 2015) ......................................................................... 9

*Sonner v. Premier Nutrition Corp.*,
  49 F.4th 1300 (9th Cir. 2022) .................................................................................................. 21

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ............................................................................................ 11, 12

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .................................................................................................................... 21

*Sunbelt Rentals, Inc. v. Victor*,
  43 F. Supp. 3d 1026 (N.D. Cal. 2014) ...................................................................................... 9

*United States v. Angelilli,*
    660 F.2d 23 (2d Cir. 1981) ..................................................................................... 18

*United States v. Carranza,*
    921 F.2d 1557 (11th Cir. 1991) ................................................................................ 3

*United States v. Councilman,*
    418 F.3d 67 (1st Cir. 2005) (en banc) ...................................................................... 8

*United States v. Kozina,*
    490 Fed. Appx. 9, 11 (9th Cir. 2012) ....................................................................... 2

*United States v. L.A. Tucker Truck Lines,*
    344 U.S. 33 (1952) .................................................................................................. 21

*United States v. Steiger,*
    318 F.3d 1039 (11th Cir. 2003), *cert. denied,* 538 U.S. 1051 (2003) ............... 8, 9, 10

*United States v. Szymuszkiewicz,*
    622 F.3d 701 (7th Cir. 2010) .............................................................................. 8, 9, 10

*Williams v. What If Holdings, LLC,*
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) ...................................... 6

*Wilson v. Huuuge, Inc.,*
    944 F.3d 1212 (9th Cir. 2019) ................................................................................ 25

*Yershov v. Gannett Satellite Info. Network, Inc.,*
    820 F.3d 482 (1st Cir. 2016) ................................................................................... 18

*Yoon v. Lululemon USA, Inc.,*
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.) .................................. *passim*

*Zaratzian v. Abadir,*
    No. 10 CV 9049 VB, 2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014), *aff'd,* 694 Fed.
    Appx. 822 (2d Cir. 2017) ................................................................................... 9, 10

*Zephyr v. Saxon Mortg. Servs., Inc.,*
    873 F. Supp. 2d 1223 (E.D. Cal. 2012) ................................................................. 16

**California Cases**

*Apple v. Superior Court,*
    56 Cal. 4th 128 (2013) ................................................................................... 3, 4, 17

*City of Los Angeles v. Workers' Comp. Appeals Bd.,*
    30 Cal. 3d 391 (1981) ............................................................................................. 20

*Davis v. Pacific Telephone & Telegraph Co.,*
    127 Cal. 312 (1899) ....................................................................................... 3, 4, 17

*Flanagan v. Flanagan*,
    27 Cal. 4th 766, 771 n.2 (2002) ................................................................*passim*

*Hataishi v. First American Home Buyers Protection Corp.*,
    223 Cal. App. 4th 1454 (2014) .................................................................. 20

*Leader v. Cords*,
    182 Cal. App. 4th 1588 (2010) .................................................................. 21

*Long v. Provide Commerce, Inc.*,
    245 Cal. App. 4th 855 (2016) .................................................................... 25

*Negro v. Superior Court*,
    230 Cal. App. 4th 879 (2014) .................................................................... 22

*Nolan v. City of Anaheim*,
    33 Cal. 4th 335 (2004) .............................................................................. 21

*People v. Blakeley*,
    23 Cal. 4th 82 (2000) ................................................................................ 20

*People v. Fields*,
    105 Cal. App. 3d 341 (1980) ............................................................... 18, 19

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985) ...................................................... 5, 14, 19, 21

*Sellers v. Just Answer LLC*,
    73 Cal. App. 5th 444 (2021) ...................................................................... 25

*Smith v. LoanMe, Inc.*,
    11 Cal. 5th 183 (2021) ...................................................... 19, 22, 23, 24

*Tuolumne Jobs & Small Business Alliance v. Superior Court*,
    59 Cal. 4th 1029 (2014) ............................................................................ 23

**Other State Cases**

*O'Brien v. O'Brien*,
    899 So.2d 1133 (Fla. Ct. App. 2005) .................................................. 10, 11

*State v. Serrato*,
    176 P.3d 356 (Okla. Crim. App. 2007) ...................................................... 3

**U.S. Constitution**

U.S. Const., Art. VI, Clause 2 ........................................................................ 3

U.S. Constitution Supremacy Clause ............................................................. 3

**Federal Statutes**

18 U.S.C.
    § 2510(1) ................................................................................................ 2
    § 2510(12) .............................................................................................. 17

Electronic Communications Privacy Act of 1986, Pub. L. 99-508, 100 Stat. 1848
    (1986) ..............................................................................................*passim*
    § 101(a) .................................................................................................. 2 .......

Title III of the Omnibus Crime Control and Safe Streets Act, Pub. L. No. 90-351, 82
    Stat. 212 (1968) ...................................................................................... 3

Wiretap Act ....................................................................................................*passim*

**Federal Regulations**

47 C.F.R. § 9.3 .................................................................................................. 18

**California Statutes**

Penal Code
    § 4 ......................................................................................................... 18
    § 630 ..................................................................................................... 21
    § 630 *et seq.* ............................................................................................ 2
    § 631 ...............................................................................................*passim*
    § 631(a) ..........................................................................................*passim*
    § 632.7 ............................................................................................*passim*
    § 632.7(a) ............................................................................ 17, 18, 23, 24
    § 632.7(c)(3) ................................................................................... 17, 23
    California Invasion of Privacy Act ....................................................*passim*

**Federal Rules**

Federal Rule of Civil Procedure
    Rule 8(a) ............................................................................................... 12
    Rule 9 .................................................................................................... 12
    Rule 9(b) ............................................................................................... 12
    Rule 12(b)(6) ...................................................................................*passim*

**Other State Statutes**

Virginia Wiretap Act ......................................................................................... 9

**Other Authorities**

H. Rep. No. 99-647, at 31 (1986) ...................................................................... 2

https://www.britannica.com/technology/Internet/Society-and-the-Internet (last visited
    May 15, 2023) ....................................................................................... 18

Jarrod J. White, *E-Mail @Work.com: Employer Monitoring of Employee E-Mail*, 48
    Ala. Law Rev. 1079, 1083 (1997) ...............................................................................8, 9, 10

S. Rep. No. 99-541, at 9, *reprinted in* 1986 U.S.C.C.A.N. at 3563 ................................................2

S. Rep. No. 99-541, at 11, *reprinted* in 1986 U.S.C.C.A.N. at 3565 ................................................2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    ARGUMENT**

**A.    The FAC Plausibly Alleges that Defendant's Chat Provider Violated the First, Second, and Third Clauses of Section 631(a) of the California Penal Code.**

The FAC alleges that Defendant employed Kustomer, Inc. (the "Chat Provider") as its chat provider for Defendant's website at https://www.ring.com ("the Website").  (FAC ¶ 10.)  The FAC plausibly alleges in detail that the Chat Provider violated the first, second, and third clauses of section 631(a) by intercepting (without user consent), harvesting, storing, and providing the chat transcripts of visitors of Defendant's Website to Meta, Inc.'s subsidiaries including Facebook, which, in turn, identifies user interests by harvesting the chat data provided by the Chat Provider.  (FAC ¶¶ 10-17.)  Meta's subsidiaries such as Facebook then sell advertising space to companies that want to use "targeted advertising" based on harvested data from chat transcripts.  *Id.* ¶ 15.  In addition, paragraph 16 of the FAC cites a hyperlink to the Chat Provider's webpage, which states in part, "Transform your support center into a profit generator by bulk messaging specific customer segments based on your unique data…to reengage dissatisfied customers."  (Goldmark Decl. Ex. B; Def.'s RJN Ex. B; Doc. 25-1; Page 11 of 57.)  Such allegations go well "beyond simply supplying this information back to Defendant." *Cody v. Boscov's, Inc.*, - F. Supp. 3d - , 2023 WL 2338302, at *2 (C.D. Cal. Mar. 2, 2023) (Sykes, J.). Such allegations are required to be assumed as true for purposes of the instant Motion.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").  Regardless of whether such targeted advertising is performed by a subsidiary of Meta *or by Defendant itself*, the use of consumer data obtained via Defendant's Chat Provider to accomplish this is actionable under section 631(a).

**1.    The Chat Provider Wiretapped Plaintiff's Chat Communications.**

**a.    Given that the Ninth Circuit Interprets Cellular Phone Communications as Wire Communications Under the Federal Wiretap Act, the First Clause of Section 631(a) Should Be Similarly Interpreted.**

Although Defendant contends that its Chat Provider could not have violated the first clause of section 631(a) because Plaintiff alleges use of a smart phone to chat with Defendant's mobile application,

(FAC ¶ 4) (Def.'s Mem. at 8:1-9:12), Defendant ignores that the Ninth Circuit has expressly held that *cellular phone communications* are *wire communications* for purposes of the federal Wiretap Act.  *In the Matter of the Application of the United States for an Order Authorizing the Roving Interception of Oral Communications*, 349 F.3d 1132, 1139 (9th Cir. 2003) ("*In the Matter*") ("*cellular telephone service, despite its apparent wireless nature, is within § 2510(1)'s definition of 'wire communication' because cellular service uses wire and cable connections to connect calls*") (emphasis added); *id.* at 1138 n.12 ("Despite the apparent wireless nature of cellular phones, communications using cellular phones are considered wire communications under the statute, because *cellular telephones use wire and cable connections when connecting calls*.") (emphasis added) (citing 18 U.S.C. § 2510(1); S. Rep. No. 99-541, at 11, *reprinted in* 1986 U.S.C.C.A.N. at 3565 (explaining that addition of "switching station" as part of definition of wire communication was meant to incorporate cellular communications); H. Rep. No. 99-647, at 31 (1986)); *Joffe v. Google Inc.*, 746 F.3d 920, 932 n.6 (9th Cir. 2013) ("We previously held that cell phone communications are 'wire communications' for purposes of the Wiretap Act") (citing *In the Matter*); *United States v. Kozina*, 490 Fed. Appx. 9, 11 (9th Cir. 2012).[1]  The Senate Judiciary Committee Report stated in relevant part as follows:

> "Subparagraph (B) [of section 101(a) of the ECPA] specifies that the use of wire, cable or other similar connections for the transmission of communications includes the use of such connections in a switching station. ***This subparagraph makes clear that cellular communications—whether they are between two cellular telephones or between a cellular telephone and a 'land line' telephone—are included in the definition of 'wire communications' and are covered by the statute***."

S. Rep. No. 99-541, at 11, *reprinted in* 1986 U.S.C.C.A.N. at 3565 (emphasis added).  Such Senate Report further explains, "In 1981 the Federal Communications Commission approved the use of cellular telephone services. ***This technology uses both radio transmission and wire*** to make 'portable' telephone service available in a car, a briefcase, or in rural areas not reached by telephone wire."  S. Rep. No. 99-541, at 9, *reprinted in* 1986 U.S.C.C.A.N. at 3563 (emphasis added).

"'The analysis for a violation of CIPA[2] is the same as that under the federal Wiretap Act.'"  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citation omitted).  "[C]ourts have

---

[1] *See also In re Google Inc. Street View Electronic Comms. Litig.*, 794 F. Supp. 2d 1067, 1081 & n.10 (N.D. Cal. 2012) (Ware, C.J.) (citing *In the Matter* as "clear Ninth Circuit precedent" "holding that cellular phone technologies are, in fact, 'wire communications'" in the Wiretap Act).

[2] California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*

1    looked at cases analyzing the Wiretap Act as informative of section 631(a)." *Licea v. Cinmar, LLC*, 2023

2    WL 2415592, at *9 (C.D. Cal. Mar. 7, 2023) (Fitzgerald, J.); *Licea v. American Eagle Outfitters, Inc.*, -

3    F. Supp. 3d -, 2023 WL 2469630, at *8 (C.D. Cal. Mar. 7, 2023) (Fitzgerald, J.). "Courts have generally

4    construed the [CIPA] as coextensive with the Wiretap Act[.]" *In re Vizio, Inc., Consumer Privacy Litig.*,

5    238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (Staton, J.) ("*In re Vizio*").

6        The foregoing case authority is to be expected because California's CIPA cannot be less

7    restrictive than federal law under the Supremacy Clause of the U.S. Constitution. (U.S. Const., Art. VI,

8    Clause 2.) "The supremacy of Title III in the regulation of communications privacy means that no State

9    has the power to simply 'opt-out' of the *minimum* requirements of federal law and pursue a non-

10   conforming regulatory path in its own wiretapping statutes. Under the current regime established by

11   Congress in Title III, a state wiretapping law can never be less restrictive than federal law." *State v.*

12   *Serrato*, 176 P.3d 356, 360 (Okla. Crim. App. 2007) (citing *United States v. Carranza*, 921 F.2d 1557,

13   1562 (11th Cir. 1991) (Title III generally pre-empts less restrictive state wiretapping laws)).

14       Notably, none of the decisions cited by Defendant recognize that a wire communication under

15   the Wiretap Act includes cellular telephone communications as held in *In the Matter*, 349 F.3d at 1138

16   n.12. Thus, the decisions cited by Defendant are distinguishable and unpersuasive for omitting such

17   analysis.

18         **b.**    **The California Supreme Court Reads Statutes to Apply to New**

19              **Technologies.**

20       Although cellular telephones did not exist at the time that CIPA was enacted into law on

21   November 8, 1967, the Court has held in interpreting CIPA "that a technology did not exist at the time

22   of a statute's enactment does not necessarily preclude the application of the statute to that technology."

23   *Matera v. Google Inc.*, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016) (Koh, J.). "The California

24   Supreme Court … regularly reads statutes to apply to new technologies where such a reading would not

25   conflict with the statutory scheme." *Id.* (citing *Apple v. Superior Court*, 56 Cal. 4th 128, 137 (2013) and

26   *Davis v. Pacific Telephone & Telegraph Co.*, 127 Cal. 312, 316 (1899)); *In re Google Inc. Gmail Litig.*,

27   2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ("*In re Google Inc.*") (same) (citing *Davis*,

28   127 Cal. at 316).

In *Apple*, the California Supreme Court held:

> "***In construing statutes that predate their possible applicability to new technology, courts have not relied on wooden construction of their terms. Fidelity to legislative intent does not 'make it impossible to apply a legal text to technologies that did not exist when the text was created***.... Drafters of every era know that technological advances will proceed apace and that the rules they create will one day apply to all sorts of circumstances they could not possibly envision.'"

*Apple*, 56 Cal. 4th at 137 (citation omitted) (emphasis added).

Indeed, in both *Matera* and *In re Google Inc.*, the Court noted that the California Supreme Court has interpreted the term "telegraph lines" "functionally" to include "telephone lines" as follows:

> "For example, in a previous evolution in communications technology, the California Supreme Court interpreted 'telegraph' ***functionally***, based on the type of communication it enabled. In *Davis v. Pacific Telephone & Telegraph*, the Supreme Court held that 'telegraph lines' in a criminal law proscribing the cutting of lines included telephone lines because '[t]he idea conveyed by each term is ***the sending of intelligence to a distance*** ... [thus] the term 'telegraph' means any apparatus for transmitting messages by means of electric currents and signals.'"

*In re Google Inc.*, 2013 WL 5423918, at *21 (emphasis added); *Matera*, 2016 WL 8200619, at *20.

*Davis* noted:

> "If the consideration could be limited to a strict etymological point of view, it would have to be conceded at once that there is a difference in the meaning of the two words,—the one conveying the idea of transmission of writing to a distance; the other, the transmission of sound to a distance.... The words ... cannot be limited to their etymological meaning, and ***consideration must be had to their present sense and acceptation***."

*Davis*, 127 Cal. at 316 (emphasis added). Given that *In re Google Inc.*, recognized "the California courts' approach to ***updating obsolete statutes in light of emerging technologies***," as a basis to find that "section 631 of CIPA applies to emails," 2013 WL 5423918, at *21 (emphasis added), construing the first clause of section 631(a) as applicable to cellular telephone communications is appropriate.

### c.    When Faced with Two Possible Interpretations of CIPA, the California Supreme Court Has Construed CIPA in Accordance with the Interpretation that Provides the Greatest Privacy Protection.

In *Matera*, the Court stated:

> "[T]he California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests.' *Flanagan*, 27 Cal. 4th at 775. Thus, when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection."

*Matera*, 2016 WL 8200619, at \*19 (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) and citing *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985)).  Thus, the Court should follow *Matera* in broadly construing the first clause because it would provide the greatest privacy protection.

> **2.    Regardless of Whether a Chat Provider Can Wiretap a Smart Phone, Such Chat Provider Cannot Eavesdrop on Such Communications Without All-Party Consent.**

Regardless of whether a chat provider can wiretap a smart phone communication in violation of the first clause of section 631(a), it is beyond dispute that the second clause covers Internet communications.  *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at \*1 (9th Cir. May 31, 2022) (holding that CIPA "applies to internet communications"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (Holcomb, J.) ("Courts agree … that CIPA § 631 applies to communications conducted over the internet.") (citing *Matera*, 2016 WL 8200619, at \*18) (holding that second clause of section 631(a) "encompasses email communications, which pass over wires, lines, or cables"); *In re Google Inc.*, 2013 WL 5423918, at \*21 ("the Court finds that section 631 of CIPA applies to emails"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020) (Labson Freeman, J.).  Although Defendant mischaracterizes *Javier* as dicta, (Def.'s Mem. at 9 n.3), Defendant omits the Court's multiple decisions cited above applying the second clause to Internet communications.  Defendant's omission speaks volumes.

> **3.    Relevant and Persuasive Case Authority Does Not Recognize an Exception for a Third Party that Surreptitiously Records a Chat and Uses Such Chat Data Other Than to Store It for the Benefit of a Party.**

The surreptitious collection of user data to create targeted advertising has been recognized as actionable under CIPA.  Indeed, in *Matera v. Google Inc.*, 2017 WL 1365021 (N.D. Cal. Mar. 15, 2017) (Koh, J.), a putative class action was filed under both the Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. 99-508, 100 Stat. 1848 (1986), and CIPA because "Google intercepts, scans, and analyzes the content of emails sent by non-Gmail users for the purpose of creating user profiles of Gmail users to create ***targeted advertising*** for Gmail users."  *Id.* at \*1 (emphasis added).  Notably, the Court denied Google's motion to dismiss the CIPA claim on the merits under Rule 12(b)(6).  *Matera*, 2016 WL 8200619, at \*18-\*21.

In *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) (Aenlle-Rocha, J.), the court explained that "Defendants' argument would imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation ***at the direction and for the benefit of a party. The text of section 631(a), however, does not contain any such exception*** ...." *Saleh*, 562 F. Supp. 3d at 520 (emphasis added). *Saleh* is directly on point and should be followed here.

Similarly, *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *3-*6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.), supports Plaintiff's position. In *Javier*, the court held after a comprehensive analysis that the third-party eavesdropper could be liable under the second prong of section 631(a) despite the defendants' characterization of the third party as a mere "extension" of the party to the communication, i.e., the website owner/operator. *Javier*, 2023 WL 114225, at *3-*6. After recognizing dueling sets of cases on this precise issue, the court explained why the case law holding that software vendors are "extensions" of the websites that employ them are unpersuasive. *Id.* at *6.

In *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (Alsup, J.), the Court recognized "a key distinction is whether or not the alleged third-party software provider aggregates or ***otherwise processes the recorded information***, which might suggest that the software vendor independently 'uses' the gathered data ***in some way***." *Id.* at *3 (emphasis added). *Williams* then noted "[t]he facts as pled suggest that the recordation is ***routine documentation*** and therefore clerical in nature, which is qualitatively different from ***data mining***." *Id.* (emphasis added). *Williams* noted that the outcome of its holding would have been different if the third party "***affirmatively engages with that data in any way other than to store it***". *Id.* (emphasis added). Thus, *Williams* did not interpret section 631(a) to mean that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation ***at the direction and for the benefit of a party***.

Most recently, in *Licea v. Old Navy, LLC*, 2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) (Sykes, J.), the court stated that "in order to establish [the third party's underlying] violations [of the statute], Plaintiff must provide facts suggesting that the third party recorded Defendant's customers' information

*for some use or potential future use beyond simply supplying this information back to Defendant*." *Id.* at *3 (emphasis added). That is precisely what the FAC alleges here. (FAC ¶¶ 10-19.)

### 4. The FAC Plausibly Alleges that Defendant's Chat Provider Intercepted the Contents of Plaintiff's Communication "While" "In Transit or Passing Over" "Any Wire, Line, or Cable" in Violation of the Second Clause.

Defendant challenges the FAC's allegations of intercepted communications by its Chat Provider while "in transit". Defendant's argument is without merit. Paragraphs 11 and 12 of the FAC clearly allege that Defendant and the Chat Provider utilize automatic routing software in which chat communications are automatically and contemporaneously sent to the chat provider. (FAC ¶¶ 11-12.)

#### a. Numerous Cases Support Plaintiff's Position.

Defendant ignores case law recognizing different types of automatic routing software. *Old Navy*, 2023 WL 3012527, at *2-*3; *Saleh*, 562 F. Supp. 3d at 509; *Yoon*, 549 F. Supp. 3d at 1077; *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.).

Numerous courts (including multiple federal circuit courts) have recognized that automatic routing software can satisfy the contemporaneous transmission requirement of either the Wiretap Act or the second clause of section 631(a) of the California Penal Code. *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130-31 (3d Cir. 2022) ("Electronic communications are similarly 'intercepted' when software reroutes communications to an interceptor.") ("So NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers.") (citing *Luis v. Zang*, 833 F.3d 619, 630-31 (6th Cir. 2016) (holding that complaint's allegations against manufacturer of computer program that computer program "immediately and instantaneously" routed e-mails and instant messages to manufacturer's servers "as they [were] being written," thereby enabling program's user to view person's electronic communications "in near real-time" adequately alleged manufacturer contemporaneously "intercepted" plaintiff's electronic communications because it supported reasonable inference that manufacturer acquired plaintiff's communications while they were still "in flight"))[3];

---

[3] *Popa* described *Luis* as follows:
"A jealous husband installed software, WebWatcher, on his wife's computer so he could monitor her online conversations. *Id.* at 623–24. Once installed, it would "***automatically acquire[ ] and transmit***[ ] communications" such as emails and ***chat messages*** to the software manufacturer,
Continued on the next page

*United States v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010) (affirming defendant's conviction under "interception" provision of Wiretap Act for setting up process whereby defendant's supervisor's emails were ***automatically forwarded*** to defendant's email account for extended period of time);[4] *United States v. Councilman*, 418 F.3d 67, 85 (1st Cir. 2005) (en banc) ("almost a year before [defendant's] alleged conduct, the academic literature had noted that . . . 'automatic routing software' that automatically forwarded duplicate copies of a user's messages *would* qualify as 'interception of E-mail within the prohibition of the ECPA.'")[5] (emphasis in original) (quoting Jarrod J. White, *E-Mail @Work.com: Employer Monitoring of Employee E-Mail*, 48 Ala. Law Rev. 1079, 1083 (1997) ("*E-Mail @Work.com*") and citing *In re Pharmatrak, Inc.*, 329 F.3d 9, 22 (1st Cir. 2003) (describing a software program as "effectively an automatic routing program") ("It was code that automatically duplicated part of the communication between a user and a … client and sent this information to a third party ….") (quoting *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) (quoting *E-Mail @Work.com*, 48 Ala. Law Rev. at 1083), *cert. denied*, 538 U.S. 1051 (2003))); *see also Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.) (citing *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014)), *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.); *Centre Law and Consulting, LLC v. Axiom Resource Mngt, Inc.*, 456 F. Supp. 3d 765, 770 & n.7 (E.D. Va. 2020) ("[T]he complaint in this case alleges that the ETR placed within plaintiff's email software "automatically intercepted" and duplicated plaintiff's emails at the point of transmission.… At this stage of this litigation, construing the facts alleged

---

Awareness, at its servers in California. *Id.* at 633. A man with whom the wife was communicating sued Awareness after his online communications were directed to its servers. *Id.* at 624. Though Awareness tried to argue that the husband, not it, had intercepted the communications by later viewing them, the Sixth Circuit disagreed. *Id.* at 633. The 'intercept of a communication,' it said, 'occur[red] at the point where WebWatcher—***without any active input from the user***—capture[d] the communication and reroute[d] it to Awareness's own servers." *Id.* As with tapped phones, Awareness ' 'acquire[d]' the communications by rerouting them to servers that it owns and controls.' *Id.*"

*Popa*, 52 F.4th at 130-31 (emphasis added) (citing *Luis*, 833 F.3d at 623-24, 633).

[4] Although the defendant had argued that there was no "interception" because the forwarding happened only after each email arrived in the supervisor's inbox, the Seventh Circuit found that the jury could have concluded, as a factual matter, that this was not so, *id.* at 704; indeed, ***the evidence indicated that the email server***, rather than the supervisor's computer, ***duplicated each message***. *Id.* at 706.

[5] A district court in the Ninth Circuit has noted that "*Councilman* is consistent with the Ninth Circuit's "contemporaneous" requirement articulated in *Konop [v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)]." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1081 (N.D. Cal. 2015) (Chen, J.).

in the complaint in the light most favorable to plaintiff, this allegation states a plausible factual basis that defendants intercepted plaintiff's electronic communications contemporaneously with transmission, as required to state a claim under the ECPA and the Virginia Wiretap Act. Other courts that have considered the automatic duplication and forwarding of electronic communications have arrived at the same conclusion. Accordingly, defendants' motions to dismiss Counts I and II of plaintiff's complaint must be denied.") (citing *Luis*, 833 F.3d at 630, *Szymuszkiewicz*, 622 F.3d at 706, and *Steiger*, 318 F.3d at 1050 (quoting *E-Mail @Work.com*, 48 Ala. Law Rev. at 1083); and *Zaratzian v. Abadir*, No. 10 CV 9049 VB, 2014 WL 4467919, at *6 (S.D.N.Y. Sept. 2, 2014)); *Cline v. Reetz-Laiolo*, 329 F. Sup. 3d 1000, 1046-48, 1051 (N.D. Cal. 2018) (Orrick, J.) (denying motion to dismiss of Wiretap and CIPA claims regarding periodic screenshots of computer's screen taken by software installed on computer) ("where the precise nature of the software may be the determining factor in whether electronic communications were 'intercepted,' I must accept plaintiffs' allegations as true and leave resolution of the issue on a developed record"); *Branden v. Branden*, 2018 WL 11303983, at *3-*4 (E.D. Tenn. Feb. 26, 2018) (quoting *Steiger*, 318 F.3d at 1050 (quoting *E-Mail @Work.com*, 48 Ala. Law Rev. at 1083)) ("[T]he Court finds that Plaintiff's allegation that Defendant viewed certain electronic communications 'in real time as they were being transmitted' is sufficient to support the reasonable inference that Defendant contemporaneously intercepted her electronic communications and, thus, sufficient to state a claim against Defendant for violation of the Federal Wiretap Act."); *Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, 2017 WL 1215753, at *9 (S.D.N.Y. Mar. 31, 2017) ("Drawing inferences in favor of the Individual Defendants, the Counterclaims have alleged that the spyware software installed by Obeid functions like a surveillance camera, capturing information while it is being processed, viewed, or sent, which is sufficient to support the inference that interception was simultaneous with the transmission of the information contained on Individual Defendants' computers."); *China Beds Direct LLC v. Winsor*, 2016 WL 8738435, at *3 (E.D. Tenn. Feb. 26, 2016) ("Where emails are ***rerouted or forwarded automatically***, courts have held that such forwarding constitutes interception for purposes of the Wiretap Act.") (emphasis added); *Sheu v. Detroit 90/90*, 2015 WL 2124624, at *13 (E.D. Mich. May 6, 2015) (quoting *Steiger*, 318 F.3d at 1050); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1031 (N.D. Cal. 2014) (quoting *NovelPoster*, 140 F. Supp. 3d at 952 (quoting *Steiger*, 318 F.3d at 1050

(quoting *E-Mail @Work.com*, 48 Ala. Law Rev. at 1083)); *Zaratzian v. Abadir*, No. 10 CV 9049 VB, 2014 WL 4467919, at *6 (S.D.N.Y. Sept. 2, 2014), *aff'd*, 694 Fed. App'x 822 (2d Cir. 2017) (holding at summary judgment stage that auto-forwarding of emails from plaintiff's email account to defendant's email account satisfied contemporaneous standard for liability under narrow "interception" standard applied to ECPA); *Shefts v. Petrakis*, 2012 WL 4049484, at *7-*9 (C.D. Ill. Sept. 13, 2012) (holding that spyware that contemporaneously transmitted screen shots of computer activity to remote location constitutes interception under ECPA) (citing *Steiger*, 318 F.3d at 1050 and *Szymuszkiewicz*, 622 F.3d at 705-06); *Klumb v. Goan*, 2011 WL 13309057, at *6 (E.D. Tenn. Jan. 26, 2011) ("[T]his case is similar to *Szymuszkiewicz* in that plaintiff has presented evidence in this case that eBlaster directed that all incoming e-mails to plaintiff's account automatically be copied and forwarded to the defendant. . . . Forwarding plaintiff's e-mail to defendant's e-mail account requires the e-mails to be transmitted from the plaintiff's e-mail account in packets through the internet before coming back to rest in the defendant's e-mail account. The point is that plaintiff's e-mails were automatically routed by an electronic device (the Klumb Lumber computers) through the internet to the defendant's e-mail account."); *Garback v. Lossing*, 2010 WL 3733971 (E.D. Mich. Sept. 20, 2010) (quoting *Steiger*, 318 F.3d at 1050 (quoting *E-Mail @Work.com*, 48 Ala. Law Rev. at 1083)); *Murray v. Financial Visions, Inc.*, 2008 WL 4850328, at *6 (D. Ariz. Nov. 7, 2008) (quoting *Steiger*, 318 F.3d at 1050) ("We are presented with no facts describing the process of email transmissions or interceptions in this case. Plaintiffs have alleged that defendants "automatically forwarded copies of all e-mails ... at the time the messages were sent." *Amended Complaint* ¶ 18. There is no allegation that any email was ever in electronic storage. While we are skeptical of the validity of plaintiffs' claims given the Ninth Circuit's narrow reading of the Wiretap Act, we are not prepared at this early stage of the proceedings to conclude as a matter of law that these email transmissions necessarily involved "electronic storage" so as to defeat plaintiffs' claims. Accordingly, the Principal defendants' motion for judgment on the pleadings is denied (doc. 78).") (emphasis in original); *Potter v. Havlicek*, 2007 WL 539534, at *7-*8 (S.D. Ohio Feb. 14, 2007); *O'Brien v. O'Brien*, 899 So.2d 1133, 1137 (Fla. Ct. App. 2005) ("[A] valid distinction exists between a spyware program similar to that in *Steiger*, which simply breaks into a computer and retrieves information already stored on the hard drive, and a spyware program similar to the one installed by the Wife in the instant

1    case, ***which copies the communication as it is transmitted*** and routes the copy to a storage file in the
2    computer.") (emphasis added) (interpreting Florida law).

    **b.    Plaintiff's Communication Need Not Arrive to the Undisclosed Recipient**
       **Before It Arrives to the Intended Recipient.**

5    Although Defendant argues that Defendant itself could not have intercepted a user's
6    communication because it was the intended recipient, (Def.'s Mem. at 10:20-11:12), Defendant
7    conveniently ignores that the FAC alleges that a third party chat provider (Kustomer, Inc.) intercepted
8    the communications between Plaintiff and Defendant.  That distinction matters.

9    Moreover, in *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002), the Ninth
10   Circuit adopted a "contemporaneous" requirement in determining what constitutes an interception of a
11   wire communication under the Wiretap Act.  Such interpretation was reaffirmed in *In re Facebook, Inc.*
12   *Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("We adopt the First and Seventh Circuits'
13   understanding that ***simultaneous***, unknown duplication and communication of GET requests do not
14   exempt a defendant from liability under the party exception. . . . [W]e conclude that Facebook is not
15   exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the
16   communication.") (emphasis added), *cert. denied*, 141 S. Ct. 1684 (2021).  Thus, the communication to
17   the undisclosed recipient of the plaintiff's communication need not arrive ***before*** it is received by the
18   intended (disclosed) recipient.  Defendant's apparent assumption to the contrary ignores binding Ninth
19   Circuit precedent.

20       **c.    The Decisions Cited by Defendant Are Distinguishable.**

21   Defendant's reliance upon *American Eagle*, 2023 WL 2469630, and *Cinmar*, 2023 WL 2415592,
22   is misplaced.  *American Eagle* and *Cinmar* both stated, "The timeline of the automatic recording and
23   transcription is unclear, ***as it could occur during transit*** or it can take place after receipt of the message
24   in defendant's inbox." *American Eagle*, 2023 WL 2469630, at *9 (emphasis added); *Cinmar*, 2023 WL
25   2415592, at *10 (emphasis added).  "If there are two alternative explanations, one advanced by defendant
26   and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion
27   to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Plaintiff's
28   complaint may be dismissed only when defendant's plausible alternative explanation is so convincing

that plaintiff's explanation is *im*plausible." *Id.* "The standard at th[e] [motion to dismiss] stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

And, although *American Eagle* and *Cinmar* sought to distinguish *Saleh* (and presumably *Yoon* as well) because the "Session Reply technology" at issue therein "collects and records all interactions with a website," *American Eagle*, 2023 WL 2469630, at *9; *Cinmar*, 2023 WL 2415592, at *10, the precise "type or level of data collection" is irrelevant to distinguishing the automatic routing software used by Defendant's Chat Provider here allowing it to simultaneously receive user chat communications.

In essence, by relying upon *American Eagle* and *Cinmar*, Defendant misconstrues the applicable legal standard under Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 556 (stating that Rule 8(a) of Federal Rules of Civil Procedure "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support allegations). Defendant's thinly-veiled attempt to apply a heightened pleading standard under Federal Rule of Civil Procedure 9(b) is improper here.[6]

Defendant's reliance upon *Sephora* is misplaced for the same reasons why *American Eagle* and *Cinmar* are unpersuasive. Indeed, *Sephora*'s citation of *Cruz v. Beto*, 405 U.S. 319, 322 (1972), in support of the purported proposition that "on a motion to dismiss, factual allegations need not be accepted as true," *Sephora*, 2023 WL 2717636, at *11, is exactly the opposite of what *Cruz* held. *Cruz*, 405 U.S. at 322 ("We said: '***Taking as true the allegations of the complaint, as they must be on a motion to dismiss***, the complaint stated a cause of action.'") (emphasis added) (quotation omitted). The Supreme Court has consistently followed such proposition.[7] Thus, *Sephora* erred by disregarding well-established and binding Supreme Court precedent.

---

[6] In addressing its plausibility legal standard on a Rule 12(b)(6) motion, the U.S. Supreme Court noted that "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9[.]" *Twombly*, 550 U.S. at 569 n.14.

[7] *Twombly*, 550 U.S. at 556 ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations") (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)); *Twombly*, 550 U.S. at 556 (stating that complaint's allegations are to be "taken as true"); *Ashcroft*, 556 U.S. at 678 ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true.").

Defendant's reliance upon *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (Seeborg, C.J.), is misplaced because the allegations in *Rodriguez* are totally dissimilar to those at issue here. Notably, the operative complaint in *Rodriguez* alleged that defendant Google uploaded consumers' data to its servers for developers' use (with the consent of consumers), "but that Google also retained a copy for its own use." *Id.* at *2. The plaintiffs alleged that Google's act of sending a "second copy to itself" was improper. *Id.* Significantly, in *Rodriguez*, there was not any allegation of any use of any automatic routing software to an independent, third party, unlike the allegations at issue here. (FAC ¶¶ 11-12.) Thus, Defendant's reliance on *Rodriguez* would be akin to comparing apples to oranges.

Defendant's reliance upon *In re Vizio, Inc.* is misplaced as that decision is distinguishable because the plaintiffs included in their complaint a "rather inscrutable graphic with no textual explanation," which "suggests that [defendant] transmits their data to its Inscape platform ***significantly after*** the data arrive at their Smart TVs." *In re Vizio, Inc.*, 238 F. Supp. 3d at 1228 (emphasis added). Thus, the complaint therein made what appeared to be a judicial admission that the plaintiffs' data was held in storage for a significant period of time and was not acquired during transmission contemporaneously.

Defendant's reliance upon *Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) (Blumenfeld, J.), is misplaced. Although the plaintiffs alleged that the defendant entity accessed the plaintiffs' text communications intended for the defendant's celebrity clients before they actually reached the celebrities, *Adler* held that the proper inquiry was whether "acquisition" was "contemporaneous with transmission" "in a technical sense," which the plaintiffs failed to allege. *Id.* at *3-*4. *Adler* held that the defendant allegedly accessed the text communications "upon the completion of its transmission to the proper number." *Id.* at *4. Notably, *Adler* made no attempt to address the effect of automatic routing software on its analysis. Indeed, *Adler* was decided before *Saleh*. *Saleh*, 562 F. Supp. 3d at 521. And, *Adler* failed to distinguish either *Yoon*, 549 F. Supp. 3d at 1077, or *Revitch*, 2019 WL 5485330, at *1.

/ / /

/ / /

/ / /

/ / /

Finally, Defendant's reliance on *Rosenow v. Facebook, Inc.*, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) (Hayes, J.), is misplaced because of factual differences. In *Rosenow*, the plaintiff's allegations strongly indicated that the National Center for Missing and Exploited Children acquired the plaintiff's communications while it was in electronic storage as opposed to during transmission. *Id.* at \*2. In essence, the plaintiff's complaint made a judicial admission, which the district court could not ignore. In contrast, no such judicial admission exists here.

**5.    The Second Clause Applies to Intercepted Communications Sent From or Received at Any Place Within California.**

Assuming *arguendo* that the Court finds that the FAC fails to sufficiently allege that Defendant's Chat Provider intercepted Plaintiff's chat communication with Defendant without Plaintiff's consent "while the same is in transit or passing over any wire, line or cable," (Cal. Penal Code § 631(a)), the second clause of section 631(a) is, nevertheless, actionable under the FAC because it alleges that the intercepted communication "is being sent from, or received at any place within this state[.]" (Cal. Penal Code § 631(a).) *Ribas v. Clark*, 38 Cal. 3d 355, 359-60 (1985), is directly on point. In *Ribas*, the Supreme Court expressly rejected the defendant's argument focusing exclusively upon the "in transit" term in the second clause because it "ignores the plain meaning of section 631, subdivision (a), that provides for the punishment of one 'who willfully and without the consent of all parties…reads, or attempts to read, or to learn the contents…of [a] … communication while the same is *in transit…, or is being sent from, or received at* any place within this state…." 38 Cal. 3d at 359-60 (emphasis in original). Thus, the Supreme Court interpreted the "in transit" term and "being sent from"/"received at" phrase disjunctively. *Id.* at 360. The Court is bound to follow *Ribas*.

Indeed, as *Revitch* explained, "[T]he particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis….Section 631's protections extend explicitly to the beginnings and ends of communications, so there is no reason to consider the first part of an electronic communication beyond the statute's reach." *Revitch*, 2019 WL 5485330, at \*2 (emphasizing the phrase "*or is being sent from, or received at any place within this state*") (emphasis in original). Notably, the FAC alleges that in September 2022, Plaintiff is a California resident who visited Defendant's Website using a smart phone while physically within California. (FAC ¶¶ 4, 21.)

Finally, *In re Google Assistant Privacy Litig.*, supports Plaintiff's position. 457 F. Supp. 3d at 826 ("Because the [second] clause is written in the disjunctive, the Court agrees that it could be read to cover messages 'being sent from, or received at any place within this State,' without regard to whether the sending and receiving makes use of a 'wire, line, or cable.'").

**B.     The Fourth Clause Is Actionable Against Defendant.**

Given that Plaintiff has pled a violation of the first, second, and third clauses of section 631(a) because of the Chat Provider's actions, which Defendant has aided, Plaintiff has stated a claim under the fourth clause under an aiding and abetting theory. As was the case in *Revitch*, the defendant website merchant "violated section 631 by ***enabling*** [a third party's] wrongdoing." *Revitch*, 2019 WL 5485330, at *2 (emphasis added), *quoted in Saleh*, 562 F. Supp. 3d at 521.

*Revitch* is directly on point. The plaintiff therein alleged that the defendant website operator had software code embedded into the webpages that functioned as a wiretap that redirected the plaintiff's communications to a third party eavesdropper while the plaintiff browsed the defendant's website. *Revitch*, 2019 WL 5485330, at *1. Notably, the court held that "***it does not follow that parties to communications are immune from section 631 liability***." *Id.* at *2 (emphasis added). The court added, "[Plaintiff's] claim that [Defendant] violated section 631 by helping [the undisclosed third party] eavesdrop is therefore not barred as a matter of law." *Id.*

The Court can infer Defendant's knowledge based on the fact that the Chat Provider's behavior constitutes both wiretapping and eavesdropping that is actionable under section 631(a) of the California Penal Code, which Defendant provided substantial assistance to the Chat Provider by deliberately (but covertly) embedding the latter's software code into the code for Defendant's Website without obtaining its users' informed consent. (FAC ¶¶ 11-12, 23-24.)

**C.     Plaintiff's Claim Under Section 632.7 Is Actionable.**

Defendant argues that the alleged violation of section 632.7 fails to state a claim because the FAC does not allege that Defendant utilized a landline telephone to communicate with Plaintiff. (Def.'s Mem. at 19:24-21:12.) Defendant's argument is without merit for numerous reasons.

First, Defendant ignores the significance of *Cody v. Boscov's, Inc.*, - F. Supp. 3d - , 2023 WL 2338302, at *3 (C.D. Cal. Mar. 2, 2023) (Sykes, J.), in which the Court strongly implied that the

plaintiff's section 632.7 claim would have been cognizable if that plaintiff had pled that she used a smart phone. *Boscov's*, 2023 WL 2338302, at \*3. Notably, in *Boscov's*, the court held that both federal and state courts have characterized section 632.7 as prohibiting the "'intentional recording of any communication without the consent of all parties where *one* of the parties is using a cellular or cordless telephone.'" *Id.* (emphasis in original) (quoting *McCabe v. Six Continents Hotels, Inc.*, 2014 WL 465750 at \*3 (N.D. Cal. Feb. 3, 2014) (Cousins, Mag. J.) (citing *Zephyr v. Saxon Mortg. Servs., Inc.*, 873 F. Supp. 2d 1223, 1225 (E.D. Cal. 2012))); (citing *Roberts v. Wyndham Int'l, Inc.*, 2012 WL 6001459 at \*4 (N.D. Cal. Nov. 30, 2012) (Grewal, Mag. J.); *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 688 (E.D. Cal. 2009)). In support, *Boscov's* expressly cited the California Supreme Court's decision in *Flanagan*, 27 Cal. 4th at 776. *Boscov's* stated that *Flanagan* "offers insight into California's understanding of its own laws and is thus entitled to significant weight here." *Boscov's*, 2023 WL 2338302, at \*3.

Flanagan was also cited with approval by *Old Navy*, 2023 WL 3012527, at \*4.[8]

Notably, not only was *Flanagan* cited by *Boscov's* and *Old Navy*, it was also cited in *McCabe*, *supra*, in which the Court interpreted section 632.7 of the California Penal Code as applicable "'where one of the parties is using a cellular or cordless telephone.'" *McCabe*, 2014 WL 465750, at \*3 (quoting *Zephyr*, 873 F. Supp. 2d at 1225). *McCabe* explained that its foregoing interpretation comported with *Flanagan* as follows:

> "This interpretation comports with the California Supreme Court's discussion of § 632.7 in *Flanagan v. Flanagan*, in which the Supreme Court stated that § 632.7 prohibited the "intentional interception or recording of a communication involving *a* cellular phone or *a* cordless phone." 27 Cal.4th 766, 776 (2002) (emphasis added). While the California Supreme Court's analysis of § 632.7 was not central to its holding in *Flanagan* the Supreme Court's discussion is instructive of its interpretation of the statute, and accordingly, guides this Court's analysis."

*McCabe*, 2014 WL 465750 at \*4 (emphasis in original). Thus, *Boscov's* and *Old Navy*'s reliance upon *Flanagan* was not an aberration. Multiple federal district courts, including the Court, have cited

---

[8] *Old Navy* also relied upon *Adler*, whereby the court denied the dismissal of a section 632.7 claim in which the plaintiffs challenged the defendant's business practice regarding text messages sent to consumers via SMS text messaging. 2021 WL 4805435, at \*1, \*5-\*6; *Old Navy*, 2023 WL 3012527, at \*4; *see also Byars v. The Goodyear Tire and Rubber Co.*, 2023 WL 1788553, at \*5 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) (citing *Adler*). Significantly, *Adler* made no analysis as to the precise communication device used by the defendants to transmit text messages to the plaintiffs.

*Flanagan* with approval in interpreting section 632.7 as applicable where *one* of the parties is using a cellular or cordless telephone to communicate.

Second, the Court should broadly construe the term, "landline telephone," in section 632.7(a) of the Penal Code, which is undefined, ***functionally*** as encompassing Defendant's computer equipment, which connected with Plaintiff's smart phone to transmit and receive Plaintiff's chat communications. As mentioned above, "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *Matera*, 2016 WL 8200619, at *20 (citing *Davis*, 127 Cal. at 316; *Apple*, 56 Cal. 4th at 1373); *In re Google Inc.*, 2013 WL 5423918, at *21 (same).

Indeed, in *In re Google Inc.*, the Court noted that the California Supreme Court has interpreted the term "telegraph lines" "functionally" to include "telephone lines" "because '[t]he idea conveyed by each term is ***the sending of intelligence to a distance*** ... [thus] the term 'telegraph' means any apparatus for transmitting messages by means of electric currents and signals.'" *In re Google Inc.*, 2013 WL 5423918, at *21 (emphasis added).[9] Given that *In re Google Inc.*, recognized "the California courts' approach to ***updating obsolete statutes in light of emerging technologies***," as a basis to find that "section 631 of CIPA applies to emails," 2013 WL 5423918, at *21 (emphasis added), the undefined term, "landline telephone," in section 632.7(a) should be broadly construed as applicable to Internet-based communication machines, equipment, or devices such as computer servers.

Third, section 632.7 of the California Penal Code broadly defines the term, "Communication," as "***includes***, but is not limited to, communications transmitted by voice, ***data***, or ***image***, including ***facsimile***." (Cal. Penal Code § 632.7(c)(3)) (emphasis added). "It is important to note that the 'includes, but is not limited to,' language means that '[communication]' includes more than just the items that fall within the list of examples." *Sebastian Int'l, Inc. v. Russolillo*, 151 F. Supp. 2d 1215, 1220 n.7 (C.D. Cal. 2001) (Moreno, J.); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017) (characterizing the word "includes" as "open-ended"); *In re Vizio, Inc.*, 238 F. Supp. 3d at 1224 ("This word [includes]

---

[9] The federal Wiretap Act defines "electronic communication" in relevant part to mean "any transfer of signs, signals, writing, images, sounds, data, or ***intelligence of any nature*** transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12)) (emphasis added). Thus, the transmission of "intelligence" in communications is firmly rooted in both federal and California law.

'normally implies that the proffered definition falls short of capturing the whole meaning.'") (quoting *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) and *United States v. Angelilli*, 660 F.2d 23, 31 (2d Cir. 1981) ("The use of the word 'includes,' rather than a more restrictive term such as 'means,' 'indicates that the list is not exhaustive but merely illustrative.'") (citation omitted)). "'As a rule, [a] definition which declares what a term 'means' ... excludes any meaning that is not stated.'" *In re Vizio, Inc.*, 238 F. Supp. 3d at 1224 (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008) (citation omitted)). But, the Legislature chose the word "includes" instead for the definition of "Communication." Given that communications transmitted by "data," "image," or "facsimile," are within the scope of section 632.7, this strongly implies that the Legislature intended the term, "landline telephone," to be broadly construed.

Fourth, it is generally understood that "The Internet works through a series of networks that connect devices around the world ***through telephone lines***."[10] If Defendant is using telephone lines to connect its computer servers and other equipment to the Internet (which is surely the case), then surely the devices it is using to connect to the Internet are functionally equivalent to the "landline telephone" term in section 632.7(a) of the Penal Code. Indeed, in *Roberts*, the Court noted that Voice over Internet Protocol "requires ***internet access*** and therefore ***ostensibly could be construed as a landline form of telephone communication***[.]" 2012 WL 6001459, at *4 (emphasis added) (citing 47 C.F.R. § 9.3). Thus, *Roberts* lends support for Plaintiff's position. *See also McCabe*, 2014 WL 465750, at *3 (citing cases).

Fifth, "the California Supreme Court's repeated finding that the California legislature intended for CIPA to establish broad privacy protections supports an expansive reading of the statute." *In re Google Inc.*, 2013 WL 5423918, at *21 (citing cases). Notably, the fact that section 632.7 is in the Penal Code is insignificant. *Sebastian Int'l, Inc.*, 151 F. Supp. 2d at 1218 ("[I]n California 'there is no rule of strict construction of penal statutes. Such statutes are to be construed '…according to the fair import of their terms, with a view to effect [their] objects and to promote justice.''") (citing *People v. Fields*, 105 Cal. App. 3d 341, 343 (1980)) (citing Cal. Penal Code § 4) ("The rule of the common law, that penal

---

[10] https://www.britannica.com/technology/Internet/Society-and-the-Internet (last visited May 15, 2023) (emphasis added).

statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice.")).

As mentioned above, in *Matera*, the Court stated:

> "[T]he California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests.' *Flanagan*, 27 Cal. 4th at 775. Thus, when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection."

*Matera*, 2016 WL 8200619, at *19 (quoting *Flanagan*, 27 Cal. 4th at 775 and citing *Ribas*, 38 Cal. 3d at 360-61). Thus, the Court should follow *Matera* in broadly construing the "landline telephone" term in section 632.7 because it would provide the greatest privacy protection.

Sixth, Defendant's reliance upon *Cinmar*, 2023 WL 2415592, at *11-*13, is misplaced for numerous reasons. First, *Cinmar*'s holding that smartphones aren't covered by section 632.7 contradicts *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 n.10 (2021), which expressly acknowledges that smartphones are covered by section 632.7.

Second, *Cinmar* repeatedly construed the term "telephone" ***functionally*** with respect to smart phones in: (1) "declin[ing] to interpret the first clause [of section 631(a)] as applying to smart phones which are wireless, despite their use of communication technologies which then are comprised of 'wire[s], line[s], cable[s], or instrument[s],'" *Cinmar*, 2023 WL 2415592, at *5; and (2) granting the defendant's motion to dismiss as to the plaintiffs' section 632.7 claim because the plaintiffs were "using the function of their smart phone that operates like a computer which falls outside of the scope of section 632.7," *id.* at *12. In support, *Cinmar* relied upon *Mastel v. Miniclip*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021) ("[a]lthough iPhones contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers"). Thus, both *Cinmar* and *Mastel* viewed a smart phone ***functionally*** as a small computer. If a smart phone is analyzed functionally for purposes of CIPA provisions, then why isn't the "landline telephone" provision in section 632.7, which is part of CIPA, interpreted functionally too? *Cinmar* can't have it both ways.

Third, *Cinmar* erred by relying on a plain meaning analysis without persuasively explaining how to reconcile section 632.7's inclusion of communications transmitted by "data, or image, including facsimile" within the definition of "Communication," which are not aural containing a human voice.

Fourth, *Cinmar* erred by relying upon post-enactment events as "legislative history". *Cinmar*, 2023 WL 2415592, at *12. "Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011). *Cinmar* apparently sought to apply the rule of statutory interpretation known as legislative acquiescence, but that rule is predicated upon the Legislature acquiescing to a ***previous judicial construction***. *People v. Blakeley*, 23 Cal. 4th 82, 89 (2000) ("when the Legislature amends a statute without changing those portions of the statute that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the ***previous judicial construction***.") (emphasis added). *Cinmar* failed to cite any California appellate decision that squarely held that "landline telephone" does not include computer equipment connected to the Internet.

*Matera* is directly on point in finding "minimal value in the Legislature's inaction with respect to amending CIPA." *Matera*, 2016 WL 8200619, at *21. *Matera* noted that "[t]he California Supreme Court has stated that legislative inaction may indicate many things, including the 'sheer pressure of other and more important business, political considerations, or a tendency to trust to the courts to correct their own errors.'" *Id.* (quoting *City of Los Angeles v. Workers' Comp. Appeals Bd.*, 30 Cal. 3d 391, 403-04 (1981)). "The Legislature's failure to act may indicate many things other than approval of a judicial construction of a statute." *City of Los Angeles*, 30 Cal. 3d at 404.

*Cinmar* (and Defendant) both failed to point to any bill in which the California Legislature considered and rejected amending section 632.7 to define "landline telephone" to include computer equipment connected to the Internet. That omission matters in evaluating the significance of the legislative inaction. *Matera*, 2016 WL 8200619, at *21 ("Nor does Google point to any bill in which the California Legislature considered and rejected amending CIPA to include email."); *City of Los Angeles*, 30 Cal. 3d at 404 ("there is no evidence that the … court's interpretation of the predecessor statute … was ever brought to the Legislature's attention").

Fifth, *Cinmar* erred by relying upon *Hataishi v. First American Home Buyers Protection Corp.*, 223 Cal. App. 4th 1454 (2014), which did not address the question whether "landline telephone" includes computer equipment connected to the Internet. It is well-established under both federal and California law that a decision is not precedential for a point not considered. *Sethy v. Alameda County Water District*,

545 F.2d 1157, 1159-60 (9th Cir. 1976) (en banc) (citing *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37-38 (1952) (prior decision is not binding precedent on point not raised in briefs or argument nor discussed in the opinion of the Court in that case)); *Nolan v. City of Anaheim*, 33 Cal. 4th 335, 343 (2004) ("A decision, of course, does not stand for a proposition not considered by the court.").

Finally, *Cinmar* erred by ignoring that section 632.7 should be broadly construed to effectuate its remedial purpose, which is "to protect the right of privacy of the people of this state." (Cal. Penal Code § 630); *Leader v. Cords*, 182 Cal. App. 4th 1588, 1598 (2010). *Cinmar* should have followed *Flanagan* by construing section 632.7 in a manner that "fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests." *Matera*, 2016 WL 8200619, at *19 (quoting *Flanagan*, 27 Cal. 4th at 775 and citing *Ribas*, 38 Cal. 3d at 360-61).

Defendant's reliance on *Byars v. Hot Topic, Inc.*, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) (Bernal, J.), is misplaced as the court in *Hot Topic* regrettably did exactly what the Ninth Circuit prohibited in *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023) – specifically, the court's entire decision is permeated with impermissible adverse credibility and standing inferences against the plaintiff therein on the basis of being a litigation tester.

Moreover, *Hot Topic* is unpersuasive for the same reasons why *Cinmar* is unpersuasive.

Finally, the portions of *Hot Topic*'s analysis cited by Defendant are dicta because *Hot Topic*'s analysis of the merits of the CIPA claims should be disregarded because the Court found a lack of subject matter jurisdiction. *Id.* at *7. It is well established that a dismissal of claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure "requires a judgment on the merits and cannot be decided before the court assumes jurisdiction." *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1305 (9th Cir. 2022).[11]

**D.    The FAC Sufficiently Alleges the Absence of Plaintiff's Consent.**

Defendant contends that the FAC fails to sufficiently allege lack of implicit consent as to both the section 631(a) and section 632.7 claims. (Def.'s Mem. at 11:13-13:6; 21:13-22:5.) Not so. (*See*

[11] In *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), the U.S. Supreme Court expressly declined to endorse the Ninth Circuit's prior practice of "assuming" jurisdiction for the purpose of deciding the merits, which the Ninth Circuit had described as the "doctrine of hypothetical jurisdiction." *Id.* at 94 ("We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers."). Thus, *Hot Topic* goes "beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Id.*

FAC ¶¶ 12, 24, 37.)

"'Consent may be express or may be implied in fact from the '*surrounding circumstances* indicating that [the party to the call] *knowingly agreed* to the surveillance.'" *NEI Contracting and Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) ("*NEI*") (citing cases) (emphasis added). "The critical question is whether the party whose communications were intercepted had *adequate notice of the interception*." *Id.* (citing *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 846-48 (N.D. Cal. 2014) (emphasis added). "In the typical implied in fact consent scenario, a party is informed that his call will be recorded, and he continues to use the communication system *after receiving notice the communications are being intercepted*." *NEI*, 2016 WL 4886933, at *3 (citing *Negro v. Superior Court*, 230 Cal. App. 4th 879, 892 (2014)) (emphasis added). "In the absence of such notice, '[t]he surrounding circumstances must *convincingly show* that the party *knew about and consented to the interception* in spite of the lack of formal notice or deficient formal notice.'" *Negro*, 230 Cal. App. 4th at 892 (emphasis added).

In *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), the Ninth Circuit concluded that "the California Supreme Court would interpret Section 631(a) to require the *prior consent* of all parties to a communication." *Id.* at *2 (emphasis added). That is, "retroactive consent" is not actionable under California law. *Id.* at *1-*2. The Court should follow *Javier*.

### 1. Defendant's Reliance on *Smith v. LoanMe, Inc.* Is Misplaced.

Defendant's reliance upon language in footnote 4 of *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 194 n.4 (2021),[12] is misplaced for several reasons. First, contrary to Defendant's assumption, *Smith* does not require or allow the Court to decide the consent issue as a matter of law. *Smith*'s use of the word "may," which is permissive, but not mandatory, indicates that the Supreme Court merely intended to express the mere *possibility* that a reasonable inference could potentially be drawn that "a party sending a communication" such as a "facsimile or text transmission" has consented to having it recorded by the intended recipient. Yet, the Supreme Court did not definitively decide such issue as a matter of law.

---

[12] Footnote 4 states: "The *circumstances* involved with certain kinds of communications *may* lead to a *reasonable inference* that a party sending a communication has consented to having it *recorded* by the intended recipient — *recordation* would be expected with a facsimile or text transmission, for example." *Smith*, 11 Cal. 5th at 194 n.4 (emphasis added).

Second, the Supreme Court's musings about a reasonable inference of consent in the context of "a party sending a communication" such as a "facsimile or text transmission" in the context of a cause of action alleging the violation of section 632.7 of the Penal Code is dictum,[13] which was unnecessary to deciding the precise legal issue of "whether section 632.7 applies to the parties to a communication, prohibiting them from recording a covered communication without the consent of all participants, or whether the section is concerned only with recording by persons other than parties . . . such as an individual who covertly intercepts a phone call and eavesdrops upon it." 11 Cal. 5th at 188.

Third, *Smith*'s dictum would, in essence, render the reference to "data, or image, including facsimile" in subdivision (c)(3) of section 632.7 as mere surplusage and a nullity, which is to be avoided. *Tuolumne Jobs & Small Business Alliance v. Superior Court*, 59 Cal. 4th 1029, 1038 (2014) ("It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage."). "*An interpretation that renders statutory language a nullity is obviously to be avoided.*" *Id.* at 1039 (emphasis in original). After all, if a party to a facsimile or text message always consents to the recording of such communication by the intended recipient of such communication, then why would the Legislature have specifically included the reference to "facsimile," "data", or "image" within the definition of "Communication" as actionable? If anything, the Legislature's inclusion of such terms indicates that the concept of consent is case-specific, dependent on the surrounding circumstances, and is not to be decided as a matter of law.

### 2.     *Smith v. LoanMe, Inc.* Rejected the Basis for *Montantes v. Inventure Foods.*

Defendant's reliance upon *Montantes v. Inventure Foods*, 2014 WL 3305578, at *3 (C.D. Cal. July 2, 2014) (Fitzgerald, J.), is equally misplaced.  *Montantes* concluded in interpreting section 632.7, "A party who has sent a communication such as an image or facsimile that is necessarily recorded upon receipt has certainly consented to that recording by the intended recipient." *Id.  Montantes*, however, was decided before *Smith*, which held that "section 632.7 applies to **parties** as well as nonparties." 11 Cal. 5th at 188 (emphasis added).  In so doing, the California Supreme Court rejected the Court of Appeal's narrower interpretation of section 632.7(a) in which the Court of Appeal had concluded that

---

[13] This is perhaps the reason why the California Supreme Court relegated the quoted language cited by Defendant in footnote 4.

"recording by a party to a phone call is not prohibited under this provision because the parties to a call normally consent to other participants' 'receipt' of their input." 11 Cal. 5th at 193-94. In rejecting the Court of Appeal's interpretation, the Supreme Court held, "Within section 632.7(a), the interception or receipt of a covered communication is not so much a discrete subject of consent as it is a description of the circumstances in which the prohibited act of *recordation* without proper consent may occur." *Id.* at 194 (emphasis in original). *Smith* added, "Although parties might normally be regarded as consenting to the receipt of their communications by other parties to a call, this acquiescence would not, ***by itself***, necessarily convey their consent to having these communications ***recorded***." *Id.* (emphasis added). Thus, by rejecting the Court of Appeal's basis for its decision, the High Court similarly rejected the basis for *Montantes* as well. And, the High Court's holding that mere consent to receipt of communications by other parties to a call is not, alone, consent to having such communications recorded is significant.

Notably, Judge Fitzgerald, the author of *Montantes*, recently denied granting a motion to dismiss asserting a virtually identical implied consent argument in *Cinmar*, 2023 WL 2415592, at *6 ("For purposes of Rule 12(b)(6), Plaintiffs sufficiently plead that they did not consent to the recording of their conversations with Defendant."), and *American Eagle*, 2023 WL 2469630, at *6 (same); *see also Sephora*, 2023 WL 2717636, at *13 ("Defendant's fact-based defense of implied or express consent, which is not apparent on the face of the complaint, is unavailing at the motion to dismiss stage."); *Javier*, 2023 WL 114225, at *3 ("implied consent does not provide a basis for dismissal of the Section 631 claim … at this stage"); *Yoon*, 549 F. Supp. 3d at 1080-81 (finding that plaintiff sufficiently pleaded lack of consent to third party session replay software provider's participation in website conversation on Rule 12(b)(6) motion despite defendant website operator's reliance on its online privacy policy).

### 3. The Court Should Not Consider Extrinsic Evidence to Decide the Issue of Implicit Consent as a Matter of Law.

Although Defendant asks the Court to consider extrinsic evidence via the Goldmark Declaration, (Doc. 25-1), and Defendant's Request for Judicial Notice, (Doc. 26), the Court should reject Defendant's argument for the reasons in Plaintiff's evidentiary objections to both. *See Rouse v. Conner*, 2012 WL 2589240, at *1 (N.D. Cal. July 3, 2012) (Hamilton, J.) ("the court may deny a request for judicial notice of facts that are not relevant to the question at issue").

1

      **4.**      **Defendant's Purported Evidence Does Not Prove Plaintiff's Impliedly Consented**

2

              **to Defendant's and Kustomer's Wrongdoing.**

3

      Assuming *arguendo* that the Court considers the extrinsic evidence cited by Defendant, it is

4

insufficient to prove as a matter of law that Plaintiff impliedly consented to any unlawful wiretapping

5

and eavesdropping of her intercepted communications while using Defendant's chat feature.  After all,

6

it is black letter law that electronic contracts of adhesion must be evaluated for their conspicuousness to

7

determine whether a consumer has assented to it.  *Sellers v. Just Answer LLC*, 73 Cal. App. 5th 444, 469

8

(2021); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 865 (2016); *Nguyen v. Barnes & Noble*

9

*Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014).  "California law is clear-'an offeree, regardless of apparent

10

manifestation of his consent, is not bound by ***inconspicuous*** contractual provisions of which he was

11

unaware, contained in a document whose contractual nature is not obvious."  *Sellers*, 73 Cal. App. 5th at

12

461 (quoting *Long*, 245 Cal. App. 4th at 862) (emphasis added).  "In the absence of actual knowledge, a

13

reasonably prudent user must be on constructive notice of the terms of the contract for a browsewrap

14

agreement to be valid."  *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019).  "Users are put on

15

constructive notice based on the conspicuousness and placement of the terms and conditions, as well as

16

the content and overall design of the app."  *Id.*

17

      "The Ninth Circuit has held … that such privacy policies do not bind users[.]"  *Yoon*, 549 F.

18

Supp. 3d at 1081 (citing *Nguyen*).  Defendant's Memorandum is bereft of any cogent analysis as to the

19

conspicuousness of Defendant's purported privacy notice applicable to users of its chat feature.

20

**E.**     **The Court Should Reject Defendant's Effort to Smear Plaintiff and Her Counsel.**

21

      Recently, the Ninth Circuit used unusually strong language to instruct district courts not to draw

22

impermissibly adverse credibility or standing inferences against a party based on being a "serial litigant"

23

because  it can be "necessary and desirable for committed individuals to bring serial litigation" to enforce

24

and advance consumer protection statutes, as Plaintiff does here.  *Langer v. Kiser*, 57 F.4th 1085, 1095

25

(9th Cir. 2023).  Defendant's attempt to impugn Plaintiff and her counsel's credibility should be rejected.

26

**F.**     **Leave to Amend Should Be Granted.**

27

      To the extent that the Court would like Plaintiff to amend the FAC to plead any facts in greater

28

detail, the Court should grant leave to do so.

1    Dated:  May 15, 2023                    PACIFIC TRIAL ATTORNEYS, P.C.

2                                            By: _/s/ Scott J. Ferrell_____

3                                            Scott. J. Ferrell
                                             Attorneys for Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2023, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

Dated:  May 15, 2023

                                        */s/ Scott J. Ferrell*
                                         Scott J. Ferrell