UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY,<br><br>    Plaintiff,<br><br>v.<br><br>RING LLC, et al.,<br><br>    Defendants. | Case No. 23-cv-00562-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**<br><br>Re: Dkt. No. 25, 39 |

Before the Court is Defendant Ring LLC's ("Ring") motion to dismiss and National Retail Federation's ("NRF") motion for leave to file amicus curiae brief. The matters are fully briefed and suitable for decision without oral argument. *See* Civil L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS** Defendant's motion to dismiss and **DENIES** NRF's motion for leave to file amicus brief for the following reasons.

I. **BACKGROUND**

Defendant Ring manufactures and sells smart home and home security devices.[1] ECF 19 ("FAC") ¶ 5. In September of 2022, Plaintiff Annette Cody ("Cody") visited Ring's website through the web browser on her smart phone and had a brief conversation through the chat feature with a customer representative from Ring. *Id.* ¶ 21.

Ring enables and allows a third party, Kustomer, Inc., a subsidiary of Meta, to intercept chats between customers and Ring. *Id.* ¶ 10. Kustomer's application program is "plugged into"

---

[1] As it must, the Court accepts Cody's allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

Ring's website. *Id.* ¶ 11. When chat messages are sent to Ring, they are "first routed through [Kustomer's] server . . . to analyze and collect customer-support agent interactions in real time . . . as they occur." *Id.* ¶ 12. When Cody used the website, Ring "caused the internet communication . . . to be recorded" and "secretly allow[ed], aid[ed], and abett[ed] [Kustomer] to intercept and eavesdrop on the conversations during transmission, and then exploit the data for their mutual gain." *Id.* ¶¶ 23, 35.

"Meta identifies 'user interests' by monitoring a collection of 'offsite' user activity," then "generates revenue by selling advertising space through its subsidiaries' ability to identify those offsite user interests," and finally "after harvesting the chat transcripts for valuable data, Meta's brands bombard the unsuspecting Website visitors with targeted advertising." *Id.* ¶ 15. Kustomer "exploit[s], monetize[es], and use[s]" the data. *Id.* ¶ 18.

On February 8, 2023, Cody filed a putative class action complaint against Ring and Does 1 through 25. ECF 1. On April 16, 2023, in response to Ring's first motion to dismiss, Cody filed a first amended complaint alleging two violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code, §§ 631(a), 632.7. ECF 19. Ring filed the motion to dismiss at issue on May 1, 2023. ECF 25.

## II.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. When evaluating a motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519

1   F.3d at 1031.  However, "allegations in a complaint . . . may not simply recite the elements of a

2   cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and

3   to enable the opposing party to defend itself effectively."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135

4   (9th Cir. 2014) (citations omitted).  The Court may dismiss a claim "where there is either a lack of

5   a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."

6   *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

7         If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to

8   amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court has discretion to deny leave

9   to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated

10  failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing

11  party by virtue of allowance of the amendment, [and] futility of amendment."  *Leadsinger, Inc. v.*

12  *BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178,

13  182, (1962)).  To determine whether amendment would be futile, courts examine whether the

14  complaint can be amended to cure the defect requiring dismissal "without contradicting any of the

15  allegations of [the] original complaint."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th

16  Cir. 1990).

### III. DISCUSSION

#### A. Section 631

19  Ring argues that Cody's claim under California Penal Code Section 631(a) fails on

20  multiple grounds: (1) Ring cannot be held liable for recording its own conversation; (2) Cody does

21  not allege tapping of a telephone line; (3) Cody's allegations undermine any claim of interception

22  in transit; (4) Cody consented to any recording; and (5) Cody fails to state a claim for aiding and

23  abetting a third-party violation.  ECF 25 at 13-26.

24  California Penal Code § 631(a) punishes any person who:

> (1) "by means of any machine, instrument, or contrivance, or in any other matter, *intentionally taps*, or makes any unauthorized connection . . . *with any telegraph or telephone wire, line, cable, or instrument*";
>
> (2) "willfully and *without the consent* of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or

meaning of any message . . . *while the same is in transit* or passing over any wire, line, or cable, or is *being sent from, or received* at any place within this state";

(3) "*uses, or attempts to use*, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; or

(4) "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

Cal. Penal Code § 631(a) (emphasis added). The California Supreme Court has clarified that this provision contains three operative clauses protecting against "three distinct and mutually independent patterns of conduct": (i) "intentional wiretapping," (ii) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (iii) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978).

Cody does not dispute that Ring cannot be held directly liable under the first three clauses of Section 631(a). *See* ECF 32 ("Response") at 12-36. Nor could she. Section 631 of California Penal Code "appl[ies] only to eavesdropping by a third party and not to recording by a participant to a conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979). "Only a third party can listen to a conversation secretly." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) ("*Noom*") (citing *Rogers v. Urlich*, 52 Cal. App. 3d 894, 899 (1975)). Thus, to the extent that Cody alleges that Ring directly violated Section 631(a)'s first, second, or third clause, those claims must fail.

Cody contends that Ring is vicariously liable under the fourth clause of Section 631(a) for aiding and abetting the third-party chat provider's violations of the first, second, and third clauses of Section 631(a). *Id.* at 12, 26. The Court addresses each liability theory in turn.

### 1. Clause One

Under California law, statutory interpretation "begins with the words themselves, giving them 'their plain and commonsense meaning,' because the words of a legal text 'generally provide the most reliable indicator of [legislative] intent.'" *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071

4

1  (9th Cir. 2020) (interpreting a California statute) (citation omitted).  The plain terms of Section

2  631(a)'s first clause prohibit intentionally eavesdropping "with any telegraph or telephone wire"

3  or with an "instrument of any internal telephone communication system."  Cal. Penal Code §

4  631(a).

5        Cody alleges that she used the web browser on a smart phone to access Ring's website.

6  FAC ¶ 21.  Clause one of Section 631(a) prohibits telephonic wiretapping, which does not apply to

7  the internet, and so cannot support Cody's claims.  *See Williams v. What If Holdings, LLC*, No. C

8  22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("the first clause of Section

9  631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the

10 internet"); *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-CV-09042-JSC, 2023 WL

11 3707181, at *2 (N.D. Cal. May 24, 2023) ("*Keurig*") (holding that the plain text of the Section

12 631(a)'s first clause "does not prohibit the non-telephonic conduct" of using a smart phone's

13 internet capabilities); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal.

14 2020) (concluding that "the plain text of [Cal. Penal Code § 631(a)] expressly requires that the

15 unauthorized 'connection' be made with 'any telegraph or telephone wire, line, cable, or

16 instrument'").  Thus, based on the plain text of the first clause, Cody's claim fails.

17       Moreover, in recognizing the distinction between the language of clause one and two,

18 courts have applied the second clause to internet communications.  *See, e.g.*, *Matera v. Google

19 Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (finding that

20 the "difference in coverage between the first and second clauses suggests that the Legislature

21 intended two separate clauses applying to different types of communications" and that the second

22 clause was not limited to telephone or telegraph communications); *Keurig*, 2023 WL 3707181, at

23 *3 (analyzing clause two for internet communications).

24       Plaintiff's arguments to the contrary are unpersuasive.  Cody contends that the first clause

25 applies to cellular phone communications because "cellular phone communications are wire

26 communications for purposes of the federal Wiretap act."  Response at 13 (citing *In re United

27 States for an Ord. Authorizing Roving Interception of Oral Commc'ns*, 349 F.3d 1132, 1139 (9th

28 Cir. 2003)).  While that may be so, Cody alleges that she accessed Ring's website using the

smartphone's internet capabilities, not its telephonic capabilities. FAC ¶ 21. As the statute only applies to telephone and telegraph technologies, Cody's claims fail.

Cody also argues that CIPA should be interpreted to apply to new technologies. Response at 14 (citing *Apple Inc. v. Superior Ct.*, 56 Cal. 4th 128, 131 (2013)). However, Cody fails to account for CIPA's multiple amendments, including in 2011 and 2022, and the Legislature has not updated clause one to include internet technologies. *See* Cal. Penal Code § 631 (amended by Stats. 2011, c. 15 (A.B. 109), § 428; Stats. 2022 c. 27 (S.B. 1272) § 1). Thus, contrary to Cody's arguments, the statute does not "predate" internet technology. *See Licea v. Am. Eagle Outfitters, Inc.*, No. ED-CV-221702-MWFJPR, 2023 WL 2469630, at *6 (C.D. Cal. Mar. 7, 2023) ("[t]he fact that the Legislature has had an opportunity to amend section 631(a) to take into account privacy issues raised by new technologies like internet messaging is indicative of its intent not to expand protections"); *Keurig*, 2023 WL 3707181, at *3 (same).

Cody next argues that "the California Supreme Court has construed CIPA . . . [to] provide[] the greatest privacy protection." Response at 15 (quoting *Matera*, 2016 WL 8200619, at *19). However, the California Supreme Court "regularly reads statutes to apply to new technologies where such a reading *would not conflict with the statutory scheme*." *Matera*, 2016 WL 8200619, at *20 (emphasis added). Here, Cody's desired interpretation of the first clause directly conflicts with the statutory text, which restricts liability to telephone and telegraph technology. Accordingly, Cody's claim cannot proceed under the first clause of Section 631.

**2. Clause Two**

The second clause of Section 631(a) applies if a third party reads or learns the content of communications without the consent of all parties, "while" the communication is "in transit . . . or is being sent from, or received" within California. Cal. Penal Code § 631(a). The Court examines whether Cody has sufficiently alleged lack of consent and the transit requirement, and whether Ring can utilize the party exception.

**a. Consent**

"Generally, consent must be express, but consent may be implied where there are 'surrounding circumstances indicating that the defendant knowingly agreed to the surveillance.'"

6

*United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) (citations omitted).  Cody alleges that she did not know that Ring was recording her conversation, and that Ring "did not obtain [Cody's] or the Class members' express or implied consent" for the intrusions.  FAC ¶¶ 23-24.  Ring's arguments to the contrary do not show that Cody consented to being recorded.

Ring argues that Cody "intended to be recorded" because she admits that she acted as a "tester" to see if Ring would record her.  ECF 25 at 19.  This argument fails.  Ring cites no cases indicating that a party's similar lawsuits against other companies implies consent to being recorded by the company in the instant litigation.

Ring also argues that Cody impliedly consented to her webchats being recorded because she typed out the messages.  ECF 25 at 18-19 (citing *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 194 n.4 (2021)) ("[t]he circumstances involved with certain kinds of communications may lead to a reasonable inference that a party sending a communication has consented to having it recorded by the intended recipient — recordation would be expected with a facsimile or text transmission, for example").  However, the Court need not rely on the dicta in a footnote in *Smith*, which assessed whether Section 632.7 of the Penal Code applies to parties to a communication.  11 Cal. 5th at 187-88, 194.

Ring also asks the Court to take judicial notice of the privacy notice disclosures on its website to suggest that Cody was aware that Ring would record and analyze her chat transcripts.  ECF 25 at 19 (citing ECF 25-1 at 13-18).  Even if the Court takes judicial notice of the webpages, Ring fails to cite any cases in which merely having a privacy policy online is sufficient to show consent under CIPA.  Ring's citation to a District of Montana case is not binding and unpersuasive.  ECF 25 at 20 (citing *Mortensen v. Bresnan Commc'n, LLC*, 2010 WL 5140454, at *5 (D. Mont. Dec. 13, 2010)).  There, the company informed plaintiffs on three occasions of its monitoring and possible transmission to third parties, including in a privacy notice, an online subscriber agreement specifically stating that accepting the service means agreeing to all the terms, and an opt-out link.  *Mortensen*, 2010 WL 5140454, at *4-5.  No such circumstances existed here.

Ultimately, Cody alleges that Ring did not obtain her express or implied consent.  Whether

7

Cody accessed Ring's privacy policy prior to sending her chats, and "whether the privacy policy contains sufficient notice of recording . . . are facts that must be developed and asserted at a later stage of litigation." *Martin v. Sephora USA, Inc.*, No. 122-CV101355-JLTSAB, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023). Accordingly, Cody has sufficiently pled lack of consent.

### b. Interception

Ring also moves to dismiss on the grounds that Cody fails to satisfy the timing requirement in the second clause. An eavesdropper must listen to a communication "*while* the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). Cody alleges that the third party's application program is "plugged into" Ring's website and allows chats to be routed "in real time . . . as they occur." FAC ¶¶ 11-12.

Cody's conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting [plaintiff's] data in transit"). Cody alleges that the third-party software is "plugged into" Ring's website, so that when a chat message is sent to Ring, it is "first routed through [Kustomer's] server." FAC ¶¶ 11-12. These vague allegations fail to explain how the software works or how the interception occurs.[2] *See, e.g.*, *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (plaintiff failed to plead unlawful interception of communications where he "does not allege with particularity how or when any defendant became aware of his communications").

---

[2] Cody spends pages in her opposition to the motion to dismiss citing a string of (out of state) cases for the proposition that "automatic routing software can satisfy the contemporaneous transmission requirement" of Section 631(a). Response at 18-22. That may be so, but it fails to address the fundamental pleading deficiencies here: the lack of specificity of Cody's allegations. *See Twombly*, 550 U.S. at 555 (a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

1    In the alternative, Cody argues that the "Second Clause Applies to Intercepted Communications Sent From or Received at Any Place Within California." Response at 25. However, Cody fails to acknowledge that the key word "while" applies to the entire clause. Cal. Penal Code § 631(a). Cody argues that the Supreme Court in *Ribas* interprets the phrase disjunctively. Response at 25. However, the *Ribas* Court explained that there may be a prima facie violation of Section 631 where a defendant eavesdrops on a conversation "while the communication was either 'in transit' or was 'being sent from' and 'received at' a place within this state." *Ribas v. Clark*, 38 Cal. 3d 355, 360 (1985). This interpretation leaves the contemporaneous requirement intact. *Id.*; *see, e.g.*, *Keurig*, 2023 WL 3707181, at *6 ("[p]laintiff cannot avoid the simultaneity argument merely because she sends or receives a message in California"). Thus, Cody fails to allege sufficient facts showing that Kustomer intercepted messages in real time.

### c. The Party Exception

Ring additionally argues that Cody's allegations demonstrate that Kustomer "operated as an extension of Ring," therefore precluding derivative liability. ECF 25 at 24. Though a person who is a "party" to a communication is exempt from liability under Section 631, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020); *see Warden*, 99 Cal. App. 3d at 811 (Section 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation"), a vendor hired by a website may act as a third-party eavesdropper if they secretly record conversations in real time. *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898-900 (N.D. Cal. 2023) (N.D. Cal. Jan. 5, 2023) (analyzing two sets of California cases in assessing whether a third party may be considered an eavesdropper); *see, e.g.*, *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("*Moosejaw*") (holding that plaintiff adequately alleges that company acted as a third party "because the code embedded into the Moosejaw.com pages functioned as a wiretap that redirected [plaintiff's] communications to [the third party] while he browsed the site"); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608 (concluding that Facebook was not exempt from liability as a matter of law as a third-party receiving simultaneous duplications and

communications).

Some cases have held that software vendors may be considered "extension[s]" of the websites that employ them where the third party only does what the party to the communication directs. *See, e.g.*, *Noom*, 533 F. Supp. 3d at 832 (distinguishing *Moosejaw* and *In re Facebook* because the third parties in those cases "intercepted and used the data" for their own benefit while the third-party vendor in *Noom* acted as a "tool" allowing Noom to "record and analyze its own data," and there were "no allegations . . . that [the vendor] intercepted and used the data itself"); *see also Williams*, 2022 WL 17869275 ("a key distinction [in determining whether the vendor can be considered a third party] is whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently 'uses' the gathered data in some way"). However, the Court rejects that interpretation of Section 631 because it adds requirements about the "intentions and usage of the prospective third party" that are not present in Section 631's second clause, and it would make the third clause (penalizing "use") superfluous. *Javier*, 649 F. Supp. 3d at 900. Accordingly, the Court adopts the reasoning in *Javier*, and holds that a vendor hired by a website may act as a third-party eavesdropper if it secretly records conversations in real time.

Thus, the Court must finally determine whether Cody has stated facts supporting Kustomer's "capability to use its record of the interaction for [another] purpose." *Javier*, 649 F. Supp. 3d at 900 (citing *Ribas*, 38 Cal. 3d at 360-61) (explaining that a company is an "unannounced second auditor" when, unlike a tape recorder, it has an "independent capability to divulge the recording for any other purpose but that of its owner"). Cody's allegations about the third party's actions are generalized and vague. Cody alleges that Meta (which owns Kustomer) engages in the practice of "monitoring" user activity, selling advertising space, and "harvesting the chat transcripts for valuable data." FAC ¶¶ 10, 15. In support of these generalized allegations, Cody alleges that Ring, Kustomer, and Meta all "profit from secretly exploiting the private chat data." *Id.* ¶ 17. Cody alleges that Ring "intentionally caused the internet communication" to be recorded by "voluntarily embedding the software code for Third-Party Spyware Company's software on Defendant's Website." *Id.* ¶ 35. However, these conclusory allegations fail to state

sufficient factual allegations to support an inference that Kustomer is capable of using the intercepted information for another purpose.[3]

As Cody has not alleged facts supporting the timing requirement of the second clause and has not alleged that Kustomer has the ability to use its record of the chat for another purpose, she fails to state a claim under the second clause of Section 631(a).

### 3. Clauses Three and Four

In sum, Cody fails to state a claim under the first and second clauses of Section 631(a). As Cody failed to allege facts suggesting that Ring used or communicated any information obtained through a violation of the first or second clauses, she has also failed to plead a violation of the third clause. *See In re Google Assistant.*, 457 F. Supp. 3d at 827.[4] Similarly, as Cody fails to establish an underlying third-party violation, she cannot allege aiding and abetting liability. *See People v. Perez*, 35 Cal. 4th 1219, 1225 (2005) ("absent proof of a predicate offense, . . . an aiding and abetting theory cannot be sustained"). The Court therefore **DISMISSES** Cody's claims under Section 631(a).

### B. Section 632.7

Ring also seeks to dismiss Cody's claim under Section 632.7. Section 632.7 of California's Penal Code imposes liability on every person who:

> without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone . . .

Cal. Penal Code § 632.7(a).

---

[3] The Bloomberg Law post incorporated by reference in the amended complaint says nothing about Ring or about Meta or Kustomer using Ring data to create targeted advertising. FAC ¶ 14; ECF 25 at 23; ECF 26 at 3-4; ECF 32-1 (Ex. G) at 43.

[4] Cody also fails to oppose this argument, and therefore concedes it. *See Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence."); *see also Keurig*, 2023 WL 3707181, at *6 n.4 (same).

1    Cody alleges that she used the web browser on her smartphone to access Ring's website.
2    FAC ¶¶ 4, 21. The fact that she used a smart phone to access the internet does not fit within
3    Section 632.7's statutory reach. *See Licea, LLC*, 2023 WL 2415592, at *12 (quoting *Mastel v.*
4    *Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021)) ("[a]lthough iPhones contain the word
5    'phone' in their name, and have the capability of performing telephonic functions, they are, in
6    reality, small computers"). Indeed, the statute very clearly refers to different types of telephone
7    technology, not the internet.

8    Cody asks the Court to "broadly construe" the term 'landline phone' in Section 632.7(a)
9    "functionally as encompassing Defendant's computer equipment, which connected with Plaintiff's
10   smart phone[.] . . . " Response at 28. However, it is not the Court's role to engage in statutory re-
11   writing. Cody also argues that Section 632.7 broadly defines communications to include "voice,
12   data, or image[s], including facsimile." *Id.* (citing Cal. Penal Code § 632.7(d)(3)). The fact that
13   the definitional provision of "communication" includes many forms does not change the statutory
14   text requiring communications transmitted between two telephones. Cody's proffered
15   construction would contradict the very terms of the statute which explicitly dictate that
16   communication between two telephones is required. The Court **DISMISSES** Cody's claim under
17   Section 632.7(a).

18   **C. MOTION FOR LEAVE TO FILE AMICUS BRIEF**

19   The National Retail Federation ("NRF") moves for leave to file an amicus brief. ECF 39.
20   The "classic role" of amicus curiae is to assist a court in a case of public interest by
21   "supplementing the efforts of counsel, and drawing the court's attention to law that escaped
22   consideration." *Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204
23   (9th Cir. 1982). It is "within the Court's discretion" whether to allow amici to file a brief, and
24   courts generally exercise "great liberality" in permitting amicus briefs. *California by & through*
25   *Becerra v. United States Dep't of the Interior*, 381 F. Supp. 3d 1153, 1164 (N.D. Cal. 2019)
26   ("*Becerra*") (citation omitted). Cody objects to the National Retail Federation's ("NRF")
27   proposed amicus brief because it echoes arguments in Ring's motion to dismiss and would
28   prejudice Cody if she were not permitted to respond. ECF 41 at 12-13. "[I]t is inapposite that an

12

1  amicus brief raises the same issues as the parties' briefs. The salient question is whether such brief
2  is helpful to the Court." *Becerra*, 381 F. Supp. 3d at 1164.  In this case, NRF's brief is not useful
3  to the Court as it provides no additional insight or authorities.  Accordingly, the Court **DENIES**
4  NRF's motion to file an amicus brief.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's Section 631(a) claim, with leave to amend.  Plaintiff's second amended complaint must be filed by **March 25, 2024**.  No additional parties or claims may be added without leave of Court or stipulation of Defendant.  However, because Plaintiff cannot amend the complaint to allege that communication through a website chat feature is between two telephones, and any amendment would be futile (*see Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998)), the Court **GRANTS** Defendant's motion to dismiss Plaintiff's Section 632.7 claim **with prejudice**. The Court **DENIES** the motion for leave to file amicus brief.

**IT IS SO ORDERED.**

Dated: February 22, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

13