UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY, | Case No.  23-cv-00562-AMO |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| RING LLC, et al., | |
| Defendants. | Re: Dkt. No. 58 |

Before the Court is Defendant Ring LLC's motion to dismiss Plaintiff Annette Cody's second amended complaint ("SAC").  The matter is fully briefed and suitable for decision without oral argument.  *See* Civil L.R. 7-1(b).  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS** Defendant's motion to dismiss without leave to amend for the following reasons.

I.      **BACKGROUND**

In September 2022, Cody visited Ring's website via a smart phone internet browser and used the website's chat feature to have a brief conversation with a customer representative.[1]  SAC ¶ 4.  Cody claims Ring enables a third party, Kustomer, Inc., to intercept chats between Ring and its customers by routing chat communications through Kustomer's server to analyze and collect data.  *Id.* ¶¶ 10-11, 20.  Cody alleges that Meta – which formerly owned Kustomer, but no longer does – used the data acquired through Kustomer's interception for targeted advertising.  *Id.* ¶¶ 22 n.2, 25.

---

[1] As it must, the Court accepts Cody's allegations in the complaint as true and construes the pleadings in the light most favorable to her.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

On February 8, 2023, Cody filed a putative class action complaint against Ring and Does 1 through 25. ECF 1. Ring moved to dismiss, and on April 16, 2023, Cody filed a first amended complaint ("FAC") alleging two violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631(a), 632.7. ECF 19. On May 1, 2023, Ring filed a motion to dismiss the FAC, ECF 25, which the Court granted with leave to amend, ECF 54 at 13. On March 25, 2024, Cody filed the SAC, alleging only a violation of Section 631(a). ECF 55. Ring moved to dismiss the SAC. ECF 58. On October 18, 2024, the Court ordered the parties to show cause as to why further amendment of Cody's complaint would not be futile. ECF 69. Cody filed a response on October 29, 2024, ECF 71, followed by Ring's supplemental brief in support of its motion to dismiss, ECF 72.

## II.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. When evaluating a motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. However, "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations omitted). The Court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

1    If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to

2    amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has discretion to deny leave

3    to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated

4    failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing

5    party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v.*

6    *BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178,

7    182, (1962)). To determine whether amendment would be futile, courts examine whether the

8    complaint can be amended to cure the defect requiring dismissal "without contradicting any of the

9    allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th

10   Cir. 1990).

### III.    DISCUSSION

12    Defendant presently moves to dismiss Cody's claim that Ring violated the fourth clause of

13   California Penal Code § 631(a) by aiding and abetting Kustomer's violation of the section's

14   second clause. This order assumes familiarity with the Court's prior dismissal of Cody's claim

15   under Section 631(a) with leave to amend and dismissal of her claim under Section 632.7 with

16   prejudice. ECF 54. The Court first considers whether Cody has sufficiently alleged an underlying

17   CIPA violation by Kustomer before considering whether Ring may be liable for Kustomer's

18   actions under Section 631(a)'s fourth clause.

### A.    Clause Two

#### i.    In-Transit Requirement

21    Ring argues that Cody's SAC does not allege facts supporting the in-transit requirement of

22   Section 631(a)'s second clause. Section 631(a)'s second clause imposes liability on anyone who

23   "willfully and without the consent of all parties to the communication, or in any unauthorized

24   manner, reads, or attempts to read, or to learn the contents or meaning of any message . . . *while*

25   the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at

26   any place within this state." Cal. Penal Code § 631(a) (emphasis added).

27    Cody's allegations in the SAC pertaining to the in-transit requirement are largely repetitive

28   of those the Court previously rejected for being conclusory, vague, and failing to explain with

United States District Court
Northern District of California

United States District Court
Northern District of California

specificity how the software works or how the interception occurs.[2]  ECF 54 at 8; *see* SAC ¶ 22 (alleging Kustomer "records consumer data in real-time"); ¶ 47 (alleging Kustomer recorded users' "chat conversations in real-time").  Cody's additional allegations also fall short of a plausible claim that Kustomer intercepts chats while in transit.  For example, the SAC refers to a page on Kustomer's website that discusses the integration of Kustomer software into a Facebook business account.[3]  SAC ¶ 21.  The page states that "Kustomer can only capture and record outbound messages sent from within the Kustomer platform" and if a client uses "the Facebook Messenger app to reply to a customer, Kustomer cannot capture that message in the timeline."  *Id*.  Cody contends this shows Kustomer "directly captures" messages and therefore intercepts communications while in transit.  *Id*.  Critically, however, Cody has not alleged that Ring has integrated Kustomer software into a Facebook business account, and she fails to explain how such information regarding Facebook accounts supports her allegations about Ring's webchats.  Absent well-pleaded allegations that Kustomer's software works to intercept communications made via Ring's chat tool, Cody's allegations remain impermissibly vague as to how Kustomer intercepts Ring's communications with its customers.

While courts have found complaints to sufficiently allege a third party's real-time interception of communications, those allegations have been more specific than Cody's here.  In *McClung v. AddShopper*, for example, the third party was claimed to have intercepted users' browsing activity and to have used that data to "barrage" users with unwanted email communications.  No. 23-CV-01996-VC, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024).  There, the court found the plaintiff had made "specific factual allegations describing how

---

[2] As neither the SAC nor Ring's motion to dismiss discuss Salesforce, the Court interprets references to the company throughout Cody's opposition, ECF 61, as intended references to Kustomer.

[3] Ring requests that the Court judicially notice this webpage (Ex. F), as well as five other webpages cited in the SAC (Exs. B-E, G).  ECF 58-1.  Cody does not oppose.  While courts are typically limited to the contents of the complaint when considering a motion to dismiss, they may take judicial notice of facts that are "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  "In general, websites and their contents may be judicially noticed."  *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (collecting cases).  These exhibits are easily verifiable, publicly available websites.  As such, the Court finds they are proper subjects of judicial notice.

1  AddShoppers's cookies intercept the information in real time" and identified statements by

2  AddShoppers about that real-time transmission.  *Id.* at *3.  Here, the SAC does not contain

3  "specific factual allegations" describing how Kustomer intercepts Ring's webchat users' data in

4  real time – rather, it includes allegations regarding the integration of Kustomer's software on other

5  platforms not at issue here.  Taking the allegations in the SAC as true, Cody has again failed to

6  allege facts sufficient to establish that Kustomer intercepts communications while in transit.

7  ii.    **Third-Party Exception**

8  Ring further argues that Cody has failed to allege that Kustomer is a third-party

9  eavesdropper independent from Ring.  To show Kustomer acted as a third-party eavesdropper,

10  Cody must state facts supporting Kustomer's "capability to use its record of the interaction for

11  [another] purpose."  *See* ECF 54 at 10; *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900

12  (citing *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985)) (explaining that an "unannounced second

13  auditor" is an entity with an "independent capability to divulge the recording for any other purpose

14  but that of its owner").  While Cody need not "plead with great particularity exactly what

15  [Kustomer] is capable of doing with data gathered from [Ring's] website," she "still must have at

16  least pled some non-conclusory factual allegations to support [Kustomer's] use capabilities."

17  *See Turner v. Nuance Commc'ns, Inc.*, No. 22-CV-05827-DMR, 2024 WL 2750017, at *10 (N.D.

18  Cal. May 28, 2024).

19  The SAC alleges that Meta engages in the practice of monitoring user activity, selling

20  advertising space, and "harvesting the chat transcripts for valuable data," and that Ring, Kustomer,

21  and Meta all "profit from secretly exploiting the private chat data."  SAC ¶¶ 24-25.  These

22  allegations are the same as those the Court previously found "fail[ed] to state sufficient factual

23  allegations to support an inference that Kustomer is capable of using the intercepted information

24  for another purpose."  ECF 54 at 10-11.  The SAC introduces allegations regarding Kustomer's

25  marketing materials, which Cody claims advertise Kustomer's capacity for information sharing.

26  *See* SAC ¶¶ 12-16.  However, Cody does not proffer factual support for her allegations that

27  Kustomer is capable of sharing Ring's information.  For example, Cody claims a Kustomer

28  webpage shows Kustomer "specifically advertises that it[] shares customer information with third-

party applications, such as Facebook." SAC ¶¶ 16-17. While this may be true, it is of no service to Cody as she has neither alleged Ring integrated Kustomer software into a Facebook page nor has she explained how facts regarding Kustomer's software's integration with Facebook give rise to a plausible inference that Kustomer can use data from chat tools on Ring's website.

Cody further alleges that Kustomer publicly advertises "its partnership with other third parties," including that clients can access and leverage Kustomer's "extensive knowledge base." SAC ¶¶ 13-14. Cody argues "[i]t is plausible that Kustomer developed [its 'Knowledge Base'] by using the extensive customer datasets of its corporate customers." ECF 61 at 18. However, Cody offers no facts to suggest it is anything other than speculation that Kustomer's "knowledge base" is built from its clients' user data or that its partnership with third parties is evidence of Kustomer's use of Ring's data for its own purposes. These materials do not specifically discuss Ring, or Meta or Kustomer using Ring data for the purposes Cody alleges, and are thus insufficient to support an inference that Kustomer is capable of using the intercepted information for another purpose. *See* ECF 54 at 11. In contrast, the court in *Balletto v. American Honda Motor Co.* found plaintiffs had sufficiently alleged Salesforce acted as a third-party eavesdropper by specifying "*how* Salesforce would be capable of using data from Honda's website: through the Einstein data intelligence platform," as well as several particular purposes for which Salesforce used the data it obtained. No. 23-CV-01017-JSW, 2024 WL 589090, at *3 (N.D. Cal. Feb. 13, 2024) (emphasis added). The Court thus concludes that the SAC does not allege with sufficient specificity that Kustomer is capable of using Ring's data, and as such, Cody has failed to show Kustomer is a third-party eavesdropper. Accordingly, Cody's claim under Section 631(a)'s second clause fails for this reason as well as for failure to plead the in-transit requirement.

### B. Clause Four

Section 631(a)'s fourth clause imposes liability on an entity that "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a). Thus, to succeed on a claim under Section 631(a)'s fourth clause, Cody must sufficiently plead a violation by Kustomer of one of Section 631(a)'s first three clauses for which Ring could be held liable.

United States District Court
Northern District of California

1  Because she has not done so, her claim under the fourth clause necessarily fails. *See People v.*
2  *Perez*, 35 Cal. 4th 1219, 1225 (2005) ("[A]bsent proof of a predicate offense, . . . an aiding and
3  abetting theory cannot be sustained."). Ring and Cody also dispute whether Section 631(a)'s
4  fourth clause imposes a knowledge or intent requirement. ECF 58 at 16-18; ECF 61 at 22-34.
5  However, because Cody has failed to allege an underlying CIPA violation by Kustomer, the Court
6  need not reach the issue. For the foregoing reasons, the Court **GRANTS** Ring's motion to dismiss
7  the SAC.

8         **C. Futility**

9         Ring urges the Court to dismiss the SAC with prejudice, arguing further amendment would
10  be futile as Cody has now had three opportunities to plead a Section 631(a) violation. ECF 72
11  at 2. Cody argues that further amendment would not be futile and lists additional allegations she
12  would plead in a third amended complaint. ECF 71 at 2-3. For example, she states she would
13  allege that Ring's website uses automatic routing software to automatically intercept
14  communications, that Kustomer acquires communications by routing the communications to its
15  own servers, and that Kustomer advertises itself as an "AI Powerhouse." ECF 71 at 2-3.
16  However, these allegations lack any specificity beyond what has already been pled in the SAC,
17  and other than the first allegation (which restates vague language the Court has already rejected
18  regarding automatic routing software on Ring's website), none are specific to Ring or Kustomer's
19  actions specifically with regard to Ring. Accordingly, the Court determines that further
20  amendment would be futile, and thus exercises its discretion to deny leave to amend. *Leadsinger,*
21  *Inc.*, 512 F.3d at 532.

22     **IV.    CONCLUSION**

23         Because Cody has failed to allege sufficient factual allegations to support her claims, the
24  Court grants Ring's motion to dismiss. Further, because Cody has had several tries at alleging
25  these claims, and because the additional allegations Cody represents she would add if granted
26  leave to amend do not cure the deficiencies identified by the Court, the Court concludes that
27  //
28  //

7

amendment would be futile.  Accordingly, the Court **DISMISSES** the Second Amended Complaint **WITH PREJUDICE**.

       **IT IS SO ORDERED.**

Dated: January 16, 2025

 

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**